STATE OF NORTH CAROLINA v. LISTON LEGGETT, JR.

No. 95A81

(Filed 3 March 1982)

**1. Criminal Law § 111.1— indictment not read to jurors**
   The trial court did not violate G.S. 15A-1213 and G.S. 15A-1221(b), prohibiting reading the indictment to the jury, when it drew information from the bills of indictment to the extent necessary to identify the defendant and explain the charges against him and the circumstances under which he was being tried as required by G.S. 15A-1213.

**2. Criminal Law §§ 66.4, 66.5— lineup identification—no suggestiveness—right to counsel not attached**
   There was no error in the trial court allowing testimony concerning the victim's identification of defendant during a pretrial lineup which was conducted according to the following procedures: (1) six black males approximately the same size, shape and age as the defendant were assembled in front of an

elevator door, (2) the victim was put into the elevator and taken to the floor where these males were lined up, (3) the victim viewed the lineup for approximately a minute and a half, (4) the males in the lineup were each holding a card bearing a number from 1 through 6, (5) individuals were asked to turn to the right, to the left and then back to a position facing directly toward the victim, and (6) the victim was taken to another floor where she identified the man holding the number 3 as her assailant. Defendant's right to counsel had not attached at the time of the lineup as no prosecution had been commenced against the defendant with regard to the cases upon review. Further, there was no merit to defendant's argument that the counsel who had been appointed for him in another case was incapable of effectively representing him at the lineup in the present case.

**3. Criminal Law § 66.8— photographic identification—testimony properly admitted**

The trial court did not err in allowing testimony and other evidence concerning a photographic identification of the defendant by the victim where the evidence showed six or seven photographs of black males were shown to the victim on two occasions, on each occasion the victim selected the defendant's photograph, and defendant's photograph was the only one in both groups of photographs shown to the victim.

**4. Criminal Law § 34.5— evidence of prior offenses—admissible to show identity**

In a prosecution for kidnapping, first-degree sexual offense and attempted first-degree rape, the trial court did not err in allowing evidence of a separate offense of attempted rape where the principal issue in the case was the identity of the defendant as the perpetrator of the crimes charged, and where the manner in which the perpetrator in each situation exposed himself to the young woman while holding a knife on her as well as the manner of his demands that they commit sexual acts with him were substantially the same. The evidence of the separate attack was properly admissible as tending to identify defendant as also being the perpetrator of the attack against the victim for which he was presently being tried.

APPEAL by the defendant from *Seay, J.,* 4 May 1981 Criminal Session of FORSYTH Superior Court.

The defendant was charged in separate bills of indictment with kidnapping, first-degree sexual offense and attempted first-degree rape. The defendant entered a plea of not guilty to each charge.

At trial the State's evidence tended to show that on 7 December 1980 Elizabeth Kay Martin was an 18 year old female student at the North Carolina School of the Arts in Winston-Salem, North Carolina. On that date she left the school and walked to the center of the city, arriving in the area of the Forsyth County Courthouse about 4:00 p.m. After passing the courthouse, her at-

tention was attracted to a Presbyterian Church on Third Street. Finding the doors locked, she walked around the churchyard for approximately 10 to 15 minutes and then returned to Third Street to begin the walk back to school. It was still light at this time. As she walked along Third Street, the defendant, Liston Leggett, Jr., came out of a parking deck, grabbed her around the throat and held a knife against her.

Upon being grabbed from behind by the defendant, she asked him if he would please let her go. The defendant then told her to come with him and began dragging her through the parking lot to an alley nearby. She began trying to free herself, and grabbed the defendant's knife with her hand. At the same time she continued to ask the defendant to let her go, indicating that she had done nothing to him and asking why he was doing this to her. During the course of this struggle, she was cut on the hand and on the forearm.

The defendant dragged her through the alley until they reached an adjacent alcove. The defendant was still dragging her by the neck with one hand and carrying the knife in the other hand. After they reached the alcove, the defendant demanded that she "give me what I want." He then told her to take her pants down. The defendant was standing directly before her, and she saw his face plainly for a minute or two while he threatened her with the knife. The defendant took his pants down and told her that he wanted her to "have oral sex with him." Miss Martin, who was bleeding from her cuts at the time and could still see the knife in the defendant's hand, took his penis into her mouth for a few seconds.

The defendant then lay down on top of Miss Martin. She testified that he "tried to insert his penis into my vagina at that time but was unsuccessful. The knife was in his possession. He reached a climax while laying on top of me. He never entered my vagina, but he climaxed on me."

She told the defendant to go ahead and she would stay in the alcove. He indicated that he did not believe her, and she repeated her statement again. The defendant left the alcove by going down the alley in the same direction he had entered with the victim earlier. She dressed herself and left the alley hurriedly in the opposite direction.

She ran back to Main Street and in the general direction of her school. When she reached Old Salem she stopped Officer David D. McKnight of the Winston-Salem Police Department and told him what had happened to her. He noted a large amount of blood on the jersey she was wearing but determined that her bleeding appeared to have stopped. The officer took her immediately to the alley she had described. He drove up the alley with her in his vehicle and stopped at the alcove she pointed out. The officer then got out of his car and entered the alcove. There was still sufficient daylight to allow him to see blood in the alcove. At that time he detected what appeared to him to be fresh blood on the cement in the alcove.

Officer McKnight then took the victim directly to a nearby hospital. A physician administered four stitches applied deeply and twenty-five stitches in the skin to close the wound on her forearm. He applied eight other stitches to two wounds in her hand.

The State in presenting its evidence introduced photographs and testimony with regard to photographic line-ups, each of which resulted in Miss Martin identifying the defendant as the perpetrator of the crimes charged. The State also introduced testimony concerning the victim's identification of the defendant at an in-custody physical line-up. The State further presented testimony of the prosecuting witness and the investigating officer from another criminal case against the defendant. This evidence and testimony is examined in greater detail hereinafter.

The defendant offered evidence in the nature of alibi evidence. He testified that he did not see Miss Martin on 7 December 1980 or at any other time and had not in any way assaulted her.

The jury found the defendant guilty of kidnapping, first-degree sexual offense and attempted first-degree rape. The defendant appealed directly to this Court from the trial court's judgment sentencing him to life imprisonment for first-degree sexual offense. On 21 August 1981, we allowed the defendant's motion to bypass the North Carolina Court of Appeals with regard to his appeals from the judgments of the trial court sentencing him to a maximum term of life imprisonment and a minimum term of 25 years imprisonment for kidnapping and a

maximum and minimum term of 20 years imprisonment for attempted first-degree rape. These sentences were "to begin at expiration of sentence in case #81CRS1079 entered in Forsyth Superior Court 16 March 1981" arising from an assault on one Porshe Mosely discussed hereinafter.

*Rufus L. Edmisten, Attorney General, by Robert G. Webb and Thomas B. Wood, Assistant Attorneys General, for the State.*

*David V. Liner and Zachary T. Bynum, III, Attorneys for the defendant-appellant.*

MITCHELL, Justice.

[1] The defendant first contends that the trial court committed reversible error by reading the bills of indictment against him to prospective jurors. The defendant asserts that the trial court thereby violated the express terms of G.S. 15A-1213 and G.S. 15A-1221(b). We do not agree.

G.S. 15A-1221(b) prohibits the reading by any person of bills of indictment against the defendant to prospective jurors or to the jury during jury selection or trial. G.S. 15A-1213 provides:

> Prior to selection of jurors, the judge must identify the parties and their counsel and briefly inform the prospective jurors, as to each defendant, of the charge, the date of the alleged offense, the name of any victim alleged in the pleading, the defendant's plea to the charge, and any affirmative defense of which the defendant has given pretrial notice as required by Article 52, Motions Practice. The judge may not read the pleadings to the jury.

The defendant specifically complains that the trial court by its opening statement to prospective jurors in the present case violated both statutes. The trial court's opening statement was as follows:

> During the course of this trial when I use the word defendant, I will be referring at all times to Liston Leggett, Jr. He has come into court and has entered pleas of not guilty to a charge of first-degree sexual offense, specifically that on December 7th, 1980, he did with force and arms, commit a first-degree sexual offense upon Elizabeth Kay Martin, that

he did this by force and against her will, and employed in the course thereof a dangerous or deadly weapon, and he is further charged and has entered a plea of not guilty to the felony of kidnapping in that he's charged with kidnapping Elizabeth Kay Martin on December the 7th, 1980, and he has come into court and also entered a plea of not guilty to a charge of attempting to rape Elizabeth Kay Martin by force and against her will, employing a deadly weapon, a knife, on December 7th, 1980.

The State has correctly pointed out that the three bills of indictment against the defendant, exclusive of captions and signature lines, constitute twenty-seven lines in the printed record. That portion of the statement by the trial court complained of by the defendant consists of thirteen lines in the printed record. Clearly the trial court did not read the indictments to the jury as prohibited by G.S. 15A-1213 and G.S. 15A-1221(b). By its previously quoted statement to prospective jurors, the trial court merely drew information from the bills of indictment to the extent necessary to identify the defendant and explain the charges against him and the circumstances under which he was being tried. In so doing, the trial court did not commit error. *See State v. McNeil*, 47 N.C. App. 30, 266 S.E. 2d 824, *appeal dismissed*, 301 N.C. 102, 273 S.E. 2d 306 (1980), *cert. denied*, 450 U.S. 915, 67 L.Ed. 2d 339, 101 S.Ct. 1356 (1981). To the contrary, this statement by the trial court was necessary to inform the prospective jurors of the circumstances surrounding the cases against the defendant as required by the specific terms of G.S. 15A-1213.

Additionally, we think the statement of the trial court was consistent with the spirit of each statute in question. The legislature apparently intended that jurors not be given a distorted view of the case before them by an initial exposure to the case through the stilted language of indictments and other pleadings. The statement by the trial court in the present case entirely complied with this intent and was not error.

[2] The defendant next contends that the trial court erred by allowing the State to introduce evidence that Miss Martin identified him as the perpetrator of the crimes charged by choosing him from a physical line-up in which he was required to participate. This contention is without merit.

We note at the outset that the record on appeal does not reflect any motions for *voir dire* hearings or any objections taken to the victim's in-court identification of the defendant or objections to the victim's testimony relating to her pretrial line-up or photographic identifications of the defendant. Therefore, the defendant failed to preserve his right to except to such evidence and effectively waived his right to raise any contentions concerning it on appeal. *State v. Hedrick*, 289 N.C. 232, 234, 221 S.E. 2d 350, 352 (1976); *Gasque v. State*, 271 N.C. 323, 339, 156 S.E. 2d 740, 751 (1967), *cert. denied*, 390 U.S. 1030, 20 L.Ed. 2d 288, 88 S.Ct. 1423 (1968); Rules 9 and 10, North Carolina Rules of Appellate Procedure. Nevertheless, due to the gravity of the offenses and the lengths of the sentences involved here, we elect to review the defendant's assignments of error on the various identification questions set forth in his brief as though they had not been waived.

In support of his contention that the trial court erroneously admitted the victim's identification of him at an in-custody physical line-up, the defendant first argues that he was denied the right to counsel during the line-up. At the time of the physical line-up in question, the defendant was in custody in connection with an unrelated charge. No prosecution had been commenced against the defendant with regard to the cases before us on this appeal. Therefore, the defendant's right to counsel had not attached. *State v. Matthews*, 295 N.C. 265, 245 S.E. 2d 727 (1978), *cert. denied*, 439 U.S. 1128, 59 L.Ed. 2d 90, 99 S.Ct. 1046 (1979); *State v. Sweezy*, 291 N.C. 366, 230 S.E. 2d 524 (1976). The mere fact that a defendant is under arrest and in custody on charges unrelated to the crimes being investigated when he is required to participate in a physical line-up does not constitute the initiation of "adversary judicial proceedings" and does not create an adversarial relationship between the State and the defendant sufficient to require the assistance of counsel. *State v. Matthews*, 295 N.C. at 285, 245 S.E. 2d at 739, and cases cited therein.

Additionally, the defendant in fact was represented by counsel who had been appointed for him in another case during the physical line-up in which he participated in the present case. The defendant argues that this counsel, not having been appointed for the specific cases here on appeal, would not have been familiar with the facts or circumstances surrounding the alleged

attack by the defendant in these cases and was incapable of effectively representing him at the line-up. As no adversary judicial proceedings had been initiated against the defendant in these cases, we find it hard to imagine how counsel who in fact represented the defendant at the line-up could have been more handicapped than one appointed especially to represent him at that line-up. In either event counsel would have been entering the case for the first time and would not have the opportunity to be fully informed about the case prior to the line-up. The purpose of counsel at a line-up is to insure that the line-up is not unncessarily suggestive and does not create a substantial likelihood of misidentification. Such purpose was served by counsel here, and it was not required that he be as prepared as if going to trial. We find this argument to be without merit.

Due process forbids an out-of-court confrontation which is so unnecessarily "suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Simmons v. United States*, 390 U.S. 377, 384, 19 L.Ed. 2d 1247, 1253, 88 S.Ct. 967, 971 (1968). Therefore, in cases in which such issues are properly raised, we must examine the reliability of any identification of the defendant during out-of-court confrontations without regard to the presence of counsel or whether formal prosecution against the defendant had been initiated.

As we have previously stated, "The test under the due process clause as to pretrial identification procedures is whether the totality of the circumstances reveals pretrial procedures so unnecessarily suggestive and conducive to irreparable mistaken identification as to offend fundamental standards of decency, fairness and justice." *State v. Henderson*, 285 N.C. 1, 9, 203 S.E. 2d 10, 16 (1974), *death penalty vacated*, 428 U.S. 902, 49 L.Ed. 2d 1205, 96 S.Ct. 3202 (1976). In evaluating such claims of denial of due process, this Court employs a two-step process. First, we must determine whether an impermissibly suggestive procedure was used in obtaining the out-of-court identification. If this question is answered in the negative, we need inquire no further. If it is answered affirmatively, the second inquiry we must make is whether, under all the circumstances, the suggestive procedures employed gave rise to a substantial likelihood of irreparable misidentification. *State v. Headen*, 295 N.C. 437, 439, 245 S.E. 2d 706, 708 (1978).

The defendant has presented no specific assertions as to why he contends the procedures employed during the pre-trial line-up in which he participated were unduly suggestive. Our independent review of the evidence clearly indicates that no suggestive procedures were employed. All of the participants in the line-up were black males of approximately the same size, shape and age as the defendant. An attorney who had previously been appointed to represent the defendant in another case was with the defendant throughout the line-up procedures and rejected several males the officers proposed to use in the line-up. Those used in the line-up were acceptable to the attorney. The six black males chosen to constitute the line-up were placed in a foyer area in city hall in a line in front of an elevator door. The victim was put into the elevator and taken to the floor where these males were lined up. When the door to the elevator opened, she viewed the line-up for approximately a minute and a half. The six individuals were asked to turn to the right, to the left and then back to a position facing directly toward the victim. She was approximately ten to fifteen feet from them at the time. Each person in the line-up was holding a card bearing a number from 1 through 6. They were lined up consecutively 1 through 6. The victim was told to view the line-up to determine whether the man who had assaulted her was present. If he was, she was to remember the number he was holding. No other instructions were given her. After she had viewed the line-up and the elevator door had closed, she was taken to another floor. She was interviewed there and definitely identified the man holding the number 3 as her assailant. The defendant, Liston Leggett, Jr., was holding card number 3.

We find no hint of impermissible suggestiveness in the line-up procedures employed here. In fact, it is difficult to imagine how a less suggestive line-up could have been conducted. Having found no impermissible suggestiveness in the procedures employed, we need not consider whether they resulted in a substantial likelihood of irreparable misidentification. *State v. Davis*, 297 N.C. 566, 572, 256 S.E. 2d 184, 187 (1979). We find no error in the action of the trial court in allowing testimony concerning the victim's identification of the defendant during the pretrial line-up.

[3] The defendant further contends that the trial court erred in allowing the State to present evidence of a pretrial photographic identification of him by the victim. We have reviewed carefully all

of the evidence in the record concerning each of the two occasions during which the victim positively identified the defendant by the use of photographs. On both occasions the six or seven photographs used were all of black males. No suggestion was made to the victim that she pick any of the photographs. Instead, she was simply given the photographs and asked to tell the officers if she saw anyone who resembled the man who had attacked her. On each occasion she selected the defendant's photograph.

The defendant was the only person whose photograph was in both groups of photographs shown to the victim. He asserts that this fact made the procedure impermissibly suggestive. We find this argument without merit. The fact that a defendant's photograph is the only one common to two groups of photographs shown a victim is not sufficient, standing alone, to support a determination that pretrial photographic identification was conducted in an impermissibly suggestive manner. The totality of the procedures employed during the photographic identification by the victim here clearly indicates that the procedures were not impermissibly suggestive. The trial court committed no error in allowing testimony and other evidence, through the victim and the officer conducting the procedures, concerning these photographic identifications of the defendant by the victim.

[4]   The defendant further contends that the trial court erred in allowing into evidence the testimony of the victim and the investigating officer in another criminal action against the defendant for assault. We find no error in the admission of this evidence.

In the case of *State v. McClain*, 240 N.C. 171, 173, 81 S.E. 2d 364, 365 (1954), Justice Ervin stated for this Court, "The general rule is that in a prosecution for a particular crime, the State cannot offer evidence tending to show that the accused has committed another distinct, independent or separate offense." The opinion in *McClain* enumerates eight exceptions to this general rule. Exception number 4 is that, "Where the accused is not definitely identified as the perpetrator of the crime charged and the circumstances tend to show that the crime charged and another offense were committed by the same person, evidence that the accused committed the other offense is admissible to identify him as the perpetrator of the crime charged." *Id.* at 175, 81 S.E. 2d at 367.

In the cases presently under review, the principal issue was the identity of the defendant as the perpetrator of the crimes charged. Although Miss Martin positively identified the defendant as the perpetrator, his evidence of alibi made the issue of whether he was, in fact, the perpetrator "the very heart of the case." *State v. Freeman*, 303 N.C. 299, 302, 278 S.E. 2d 207, 208-09 (1981). If the evidence complained of tended to show that the attack on Miss Martin and another offense were committed by the same person, evidence that the defendant committed the other offense was admissible to identify him as Miss Martin's attacker.

The evidence of a separate crime objected to by the defendant at trial and assigned as error here tended to show the following:

Miss Porshe Mosely was fifteen years old on 10 January 1981. At 10:00 o'clock p.m. on that date she went to a cousin's house to get some of her personal belongings. She stayed approximately ten minutes and left the house. She first saw the defendant in these cases, Liston Leggett, Jr., upon leaving her cousin's house. He was coming from Eighteenth Street through a parking lot. He offered to buy her a drink, but she declined the offer. She then ran to the nearby porch of a friend and knocked on the door. When no one answered, she again attempted to run. The defendant grabbed her, held a knife to her throat and began to drag her behind some apartments. After dragging Miss Mosely behind the apartments, the defendant continued to hold the knife to her throat and hit her twice in the mouth, causing her mouth to bleed. While holding the knife to Miss Mosely's throat the defendant took his penis out of his pants. She testified that, "He said if I didn't give him some he was going to kill me."

After the defendant exposed himself he began dragging Miss Mosely to a nearby church field. At that point she saw a friend, Mr. James Lowery, who owned a store across the street from the church, and began screaming to him for help. Mr. Lowery stopped his truck and began to get out, at which point the defendant released Miss Mosely and ran down a nearby path.

Miss Mosely immediately reported the incident to police officers. She then went with them to point out the defendant's home. Upon arriving there, she saw officers knock on the defendant's door. At that time she could see the defendant standing

against a wall inside the house and told the officers that he was the man who had attacked her. Evidence corroborative of Miss Mosely's testimony was offered through the investigating officers.

The accounts by Miss Martin and Miss Mosely of the attacks against them revealed many similarities in the manner in which each of them was attacked, even though the attacks occurred one month apart. In each case the perpetrator came from a parking area in the vicinity of a church and grabbed a teen-age woman on the public streets. In each case the perpetrator held a knife on the victim and proceeded to drag her to a secluded area from which he had more than one route of escape. The manner in which the perpetrator in each situation exposed himself to the young woman while holding a knife on her as well as the manner of his demands that they commit sexual acts with him were substantially the same.

We find that the testimony of Miss Mosely, when compared to the testimony of Miss Martin, revealed circumstances tending to show that the crimes before us here, which were committed against Miss Martin, and the attack against Miss Mosely were committed by the same person and that the defendant committed the attack upon Miss Mosely. Therefore, the evidence of the separate attack upon Miss Mosely was properly admissible as tending to identify the defendant as also being the perpetrator of the attack against Miss Martin for which he was convicted here. *State v. McClain*, 240 N.C. 171, 175, 81 S.E. 2d 364, 367 (1954). We conclude, therefore, that there was no error in the admission of Miss Mosely's testimony as tending to identify the defendant as the perpetrator of the attack upon Miss Martin.

Additionally, we note that the defendant in the present case took the stand and testified. During his direct testimony he stated that he had been convicted of assaulting Porshe Mosely and was currently in prison for that offense. During cross examination the defendant admitted that he hit Miss Mosely on the night in question in January of 1981 but stated that he did not hold a knife on her or drag her anywhere. He also testified concerning the police officers coming to his door that night. As the defendant on direct examination volunteered information about his assault on Miss Mosely and additionally volunteered the information that he had been convicted and was serving a prison

sentence for that assault, the admission of Miss Mosely's testimony was harmless. *State v. McDaniel*, 274 N.C. 574, 164 S.E. 2d 469 (1968).

The defendant's final contention is that the trial court erred in allowing into evidence a statement made by him to law enforcement officers. The defendant contends that his statement was prejudicial to him primarily because he indicated that he had had a haircut since the attack on Miss Martin. There was some evidence tending to indicate that, when Miss Martin first described her attacker to the police, she described him as having hair longer than the defendant's. The defendant asserts that the admission of his statement that he had had a haircut was prejudicial to his case. He further asserts that he was in such an obvious state of mental imbalance at the time that he could not knowingly waive his rights or make a voluntary statement.

The trial court conducted a *voir dire* hearing on this issue and heard evidence from the State. The defendant offered no evidence. At the conclusion of the hearing the trial court made findings of fact and concluded that the defendant freely, understandingly, and voluntarily made the statement in question. There was ample evidence to support the trial court's findings, and those findings in turn support the trial court's conclusions. The trial court did not err by allowing an officer to testify as to the statement by the defendant.

In the defendant's trial, we find

No error.