STATE OF NORTH CAROLINA v. RAYDELL GRIMES

No. 137A83

(Filed 3 November 1983)

1. **Criminal Law § 66.3— identification procedures—due process**

Identification procedures which are so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification violate a defendant's right to due process.

2. **Criminal Law § 66.3— pretrial identification—test to determine suggestiveness**

The test in determining the suggestiveness of a pretrial identification is whether the totality of circumstances reveals a pretrial procedure so unnecessarily suggestive and conducive to irreparable mistaken identity as to offend fundamental standards of decency and justice.

3. **Criminal Law § 66.3— pretrial identification procedure—likelihood of irreparable misidentification**

Even if a pretrial procedure is suggestive, that suggestiveness rises to an impermissible level only if all the circumstances indicate that the procedure resulted in a very substantial likelihood of irreparable misidentification. The factors to be considered in evaluating the likelihood of irreparable misidentification include: (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness's degree of attention; (3) the accuracy of the

State v. Grimes

witness's prior description of the criminal; (4) the level of certainty demonstrated by the witness at the confrontation; and (5) the length of time between the crime and the confrontation.

**4. Criminal Law § 66.9 — pretrial photographic identification procedure — no impermissible suggestiveness**

A pretrial photographic identification procedure was not so impermissibly suggestive or conducive to misidentification as to violate defendant's right to due process where a lineup of ten photographs of black males was exhibited to the victim of a burglary and attempted rape; upon being shown the photographic lineup, the victim without hesitation picked the photograph of the defendant; the order of the same set of photographs was rearranged several times and shown to the victim, and each time the victim selected the picture of the defendant; the victim testified that after the crime occurred in her home, her assailant told her he wanted to talk, she turned on a night light, and she and her assailant had a face-to-face conversation from five to ten minutes; when the assailant left the victim's house, she went to unlock the door to let him out and at that time turned on a light to see her way to the door; the victim testified that her assailant wore no mask or face covering and that she had seen him on the streets of the town before the night she was attacked; only five days elapsed from the time of the attack until the time of the photographic identification; and the victim testified that her selection of defendant's photograph was not the result of any suggestion by another person.

**5. Criminal Law § 66.9 — pretrial photographic identification procedure — facial hair of lineup participants**

The evidence did not support defendant's contention that defendant's picture in a photographic lineup was the only one of a man with both a mustache and a beard. Even if the picture of defendant had been the only one depicting a male with both a mustache and a beard, due process did not require that all participants in the lineup be identical but only required that the lineup be a fair one and that the officers conducting it do nothing to induce the witness to select one participant rather than another.

**6. Criminal Law § 66.1 — pretrial photographic identification — absence of glasses — opportunity for observation**

A pretrial lineup identification was not impermissibly suggestive because the victim on the night of the crime saw her assailant without her glasses and in the light of a night light where the victim testified that her distance vision was fine, that she needed glasses only for close work such as for needlework or reading, and that the light was sufficient to recognize the man as someone she had seen in town before.

BEFORE *Judge R. Michael Bruce*, at the October 13, 1982 Criminal Session of Superior Court, BEAUFORT County. The defendant was convicted of first degree burglary and attempted second degree rape and sentenced to life imprisonment. The defendant appealed to the Supreme Court as a matter of right.

*Rufus L. Edmisten, Attorney General, by Fred R. Gamin, Assistant Attorney General, for the State.*

*Moore & Moore, by Regina A. Moore, for the defendant-appellant.*

MITCHELL, Justice.

The defendant brings forward one question for this Court's review on appeal. He contends the trial court erred in denying his motion to suppress evidence of the victim's pretrial photographic identification of him. He claims that identification was tainted, suggestive and conducive to irreparable mistaken identification in violation of the defendant's right to due process under the Fourteenth Amendment to the Constitution of the United States. We find no error.

The facts surrounding the offenses for which the defendant was convicted need not be stated in great detail. The State's evidence tended to show that around 11:00 p.m. on May 14, 1982 in Aurora, North Carolina, the victim, Mrs. Penelope Mitchell, awoke to sounds of her dog barking. She heard a crashing sound coming from the kitchen of her house, and when she went to discover its source, she saw a man coming into her house through a window. The man threw something over the victim's head and forced her into her bedroom where he attempted to have sexual intercourse with her. Afterwards the victim asked the assailant to leave her house, but he told her he wanted to talk. Mitchell testified that she put on a bathrobe, turned on a night light and had a face-to-face conversation with him which lasted five to ten minutes. During that conversation the intruder told the victim his name. She testified that she thought he had said his name was "Ray Don" or "Raybon" or "Rayboy Grimes." Mitchell testified that she recognized the assailant's face as someone she had seen in town, but that she had not known his name. Mitchell testified that, after the conversation, the man asked if she wanted him to replace the window screen he had removed. She replied that she did and then let him out through the back door.

Five days after the incident the victim reported the crime to the police at which time she described her assailant as a young black male with a muscular build, a medium-sized afro hairstyle, and a light beard and mustache. She also described the clothing

and jewelry he wore. Based on her description, Euel Atkinson, Chief of Police of Aurora, compiled a lineup of ten photographs of black males. Upon being shown the lineup, the victim without hesitation picked the photograph of the defendant, remarking, "That's the man." Chief Atkinson testified that he rearranged the order of the same set of photographs several times and showed the newly arranged lineups to the victim. Each time the victim selected the picture of the defendant. The defendant put on no evidence at trial.

The defendant claims through his sole assignment of error that the evidence of the photographic identifications was improperly admitted because, of the ten photographs in the lineups, none of the pictures except that of the defendant fit the exact description given by the victim. Specifically, the defendant says that none of the pictures except the one of him depicted a black male with a beard, mustache and afro. The defendant further claims that the victim observed the intruder without her glasses and only by the light of a night light. The conduct of the identification procedure was therefore impermissibly suggestive, according to the defendant. Furthermore, the defendant claims the use of the same set of pictures in three showings tended to "plant" the defendant's face in the mind of the victim.

[1, 2] Identification procedures which are so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification violate a defendant's right to due process. *State v. Harris*, 308 N.C. 159, 301 S.E. 2d 91 (1983); *State v. Leggett*, 305 N.C. 213, 287 S.E. 2d 832 (1982). This Court has said that to determine the suggestiveness of pretrial identification, the test is whether the totality of circumstances reveals a pretrial procedure so unnecessarily suggestive and conducive to irreparable mistaken identity as to offend fundamental standards of decency and justice. *State v. Leggett*, 305 N.C. 213, 287 S.E. 2d 832 (1982).

[3] We have held that even if the pretrial procedure is suggestive, that suggestiveness rises to an impermissible level only if all the circumstances indicate that the procedure resulted in a very substantial likelihood of irreparable misidentification. The factors to be considered in evaluating the likelihood of irreparable misidentification include: (1) the opportunity of the witness to

view the criminal at the time of the crime; (2) the witness's degree of attention; (3) the accuracy of the witness's prior description of the criminal; (4) the level of certainty demonstrated by the witness at the confrontation; and (5) the length of time between the crime and the confrontation. *State v. Harris*, 308 N.C. 159, 301 S.E. 2d 91 (1983).

[4]    After a review of the above factors as they apply in this case, we find no error in the trial court's conclusion that the pretrial identification procedure was not so impermissibly suggestive or conducive to misidentification as to violate the defendant's right to due process. Mitchell testified that after the crime occurred in her home, her assailant told her he wanted to talk. She said she turned on a night light, and that she and the man had a face-to-face conversation for from five to ten minutes. When he left the house, she said she went to unlock the door to let him out. At that time, too, she turned on a light to see her way to the door. She testified that her assailant wore no mask or face covering. She also testified that she had seen her assailant on the streets of Aurora before the night she was attacked.

[5]    The defendant specifically contends that his photograph was the only photograph in the photographic lineups which depicted a young man with a beard, mustache and afro hairdo. Since the defendant has not caused the photographic lineup to be before this Court on appeal, we must rely on an examination of the testimony in the record to evaluate his claim. The testimony indicates that Chief Atkinson requested photographs of black males with facial hair to compile the lineup. Chief Atkinson testified that there were five or six pictures of men with mustaches and three with goatees, and that the defendant's was not the only picture of a man with both a mustache and beard. Even if the picture of the defendant had been the only one depicting a male with both a mustache and beard, we note that due process does not require that all participants in a lineup be identical; all that is required is that the lineup be a fair one and that the officers conducting it do nothing to induce the witness to select one participant rather than another. *State v. Montgomery*, 291 N.C. 91, 229 S.E. 2d 572 (1976).

The defendant contends that showing his picture to Mitchell in three lineups tended to plant the defendant's face in her mind.

We note that all of the other photographs were also included in each of the three lineups, and that the risk of planting the defendant's face in the victim's memory was no greater than the risk of planting any of the other photographed faces. We also note that even in the first lineup and before any possible "planting," Mitchell chose the defendant's picture without hesitation as the picture of her assailant.

[6] The defendant also argues that the victim on the night of the crime saw her assailant without her glasses and in the light of a night light. Although Mitchell testified that she was not wearing glasses at the time of the attack, she also stated that her distance vision was fine, and that she needed glasses only for close work such as for needlework or reading. She also testified that the light was sufficient to recognize the man as someone she had seen before in Aurora.

[4] There was evidence that the description the victim gave the police was a detailed one that matched the photograph of the defendant she picked out. Chief Atkinson testified that the victim showed no hesitancy in picking out the photograph of the defendant in any of the three lineups. The evidence shows that only five days elapsed from the time of the attack until the time Mitchell picked out the photographs of the defendant. Finally, Mitchell testified that her selection of the defendant's photograph was not the result of any suggestion by another person. This evidence is ample support for the trial court's findings of facts and conclusion of law to the effect that the pretrial identification procedure was not suggestive or conducive to misidentification.

We hold that the trial court committed no error in admitting the evidence of the victim's pretrial identification of the defendant as her assailant.

No error.