STATE OF NORTH CAROLINA v. WILLIAM LEE HANNAH

No. 56A84

(Filed 6 November 1984)

1. **Criminal Law § 66.9— pretrial photographic identification—not impermissibly suggestive—no violation of due process**

   The trial court properly concluded that a pretrial photographic identification procedure did not violate defendant's due process rights where there was plenary evidence to support the court's findings that the witness did not know of any suspect or that anyone was in custody when he made the identification, that the witness sat at a desk and observed eight photographs of eight white males with facial hair, that the witness was told that the suspect might or might not be in the lineup, that the officer left the presence of the witness, and that the witness selected a picture of defendant about five minutes after first observing the pictorial lineup.

2. **Criminal Law § 66.12— identification at probable cause hearing—defendant seated at defense table—not unduly suggestive**

   Although a witness observed defendant at the defense table during a probable cause hearing, the trial court correctly ruled that the identification at the hearing was not unduly suggestive or violative of defendant's due process rights because the witness had already identified defendant from a pictorial lineup.

3. **Criminal Law § 66.1— opportunity for observation by witness—sufficient**

   There was not a substantial likelihood of misidentification by the witness where the court found that: the witness's opportunity to observe defendant was somewhat impaired by darkness and rain, but he viewed defendant in the light of his headlights and was able to observe that defendant appeared drunk; the witness observed defendant for a period of time for the purpose of determining whether he needed help; the witness was able to see the right side of defendant's face and watched him long enough to see him walk from the front of his vehicle to the rear, open the trunk, get something out of the trunk, and close it; the witness described defendant's size and age; the witness observed

facial hair and a leather wallet with a chain; and the witness selected defendant's picture five minutes after being shown a photographic lineup of eight men eight days after observing defendant.

**4. Criminal Law § 66.1— opportunity for observation by witness—credibility and weight of testimony determined by jury**

Where there is a reasonable possibility of observation sufficient to permit subsequent identification, although the period of observation is brief, the credibility of the witness and the weight to be given his identification testimony is for the jury to decide.

**5. Criminal Law § 66.17— request for stipulation in presence of witness—defendant's fingerprints at scene—no prejudice**

There was no prejudice when the district attorney tendered, in the presence of the identification witness, a stipulation that defendant's fingerprints had been found in the victim's car because the witness had already identified defendant in a non-suggestive identification procedure and in a *voir dire*.

**6. Criminal Law § 68— hair sample comparison—relevant**

Testimony that a hair found in the sheet knotted around the victim's neck was consistent with a hair taken from defendant and inconsistent with the victim's hair was relevant because it tended to place defendant in the victim's presence at the time of the murder. The condition of the body when found was made no more inflammatory by the fact that a head hair consistent with defendant's was found on the body.

**7. Criminal Law § 169— technically incompetent evidence—no effect on result—no prejudice**

There was no prejudice from the admission of testimony about a pubic hair sample taken from defendant, although a comparison with a pubic hair found on the victim was excluded, because there was other compelling evidence of defendant's guilt. Where there is abundant evidence to support the main contentions of the State, the admission of technically incompetent evidence will not be held prejudicial where the defendant does not show prejudice or that the admission of the evidence could have affected the result.

**8. Criminal Law § 43.4— admission of photographs of crime scene—no error**

There was no error from the admission of photographs showing the victim's nude body with a sheet tied around her neck where the use of photographs was limited to illustrating testimony and the photographs were neither excessive in number nor unduly inflammatory.

APPEAL by Defendant from *Judge Gaines* at the 6 September 1983 Criminal Session of Superior Court, CATAWBA County.

Defendant was charged in indictments, proper in form, with first-degree burglary, felonious breaking and entering of a motor vehicle, felonious larceny of an automobile and first-degree murder. He entered a plea of not guilty to each charge.

Evidence for the State tended to show that on 15 April 1983 at approximately 5:30 p.m., Robert and Sherry Smith, family friends of the deceased, discovered the nude body of Iris Cleo Lehman on her bedroom floor. A twisted bedsheet was knotted around Mrs. Lehman's neck. The Smiths notified the authorities who came to the scene. Local police and SBI agents discovered that all of the windows in the victim's house were closed except for the window leading into a front bedroom. They found freshly disturbed dirt and mud outside that window and also found mud on a bedspread inside the house. Officers lifted fingerprints inside the house on the windowsill and on the telephone which were later identified as being defendant's fingerprints. There was no evidence of sexual activity.

David Leatherman, a neighbor of the deceased, last saw her alive at approximately 6:30 p.m. on 14 April 1983. At that time, Mrs. Lehman's car was in her carport. Sometime after 11:00 p.m. on the same night Mr. Leatherman heard a noise and upon looking toward the Lehman house, he observed that the lights were off. About 30 to 45 minutes later, he heard a noise that sounded like tires squealing. The following morning, at around 6:00 a.m., Mr. Leatherman noticed that the Lehman car was not in the carport.

Around 11:20 p.m. on the night of 14 April 1983, Donald Killian, who lived near Hickory on Section House Road, heard a vehicle hit a railroad tie in front of his house and heard a sound similar to that of a tire blowing out. Mr. Killian got in his car and drove down Section House Road to see if anyone was hurt. He observed a car and a man he later identified as the defendant changing a tire. The car was a yellowish Ford LTD with a vinyl top. The man who appeared to Mr. Killian to be drunk had long dark hair and facial hair. He was wearing a baseball cap, blue jeans and a jacket and was carrying a wallet with a chain attached. Mr. Killian thereafter selected defendant's picture from a photographic lineup as the man he saw on the night of 14 April 1983.

A yellowish Ford LTD registered in the name of Iris Cleo Lehman was found stuck in the yard of Colleen Blackburn on the morning of 15 April 1983. Mrs. Blackburn, who also lived on Section House Road, had heard a crash and the sound of wheels spin-

ning at about 12:30 to 1:00 a.m. on the morning of 15 April. The defendant's fingerprints were found on the steering wheel of the Ford automobile which was later identified as Mrs. Lehman's car. Officers obtained a white and red baseball cap and a wallet with a chain during a search of defendant's home on 19 April 1983. Defendant made a statement to the officers that he had not been in Mrs. Lehman's bedroom and that he had not been in her automobile.

At the close of the State's evidence the trial judge ruled that the charge of breaking and entering an automobile was merged with the charge of felonious larceny of an automobile.

Defendant offered nine witnesses, mostly family members, who gave evidence in the nature of an alibi. The witnesses testified that defendant was either asleep or on trips to nearby convenience stores from the afternoon of 14 April 1983 to the late morning of 15 April 1983. Two convenience store managers also testified that they had seen defendant, along with others, in their stores playing video games between 10:00 and 11:00 p.m. on 14 April 1983.

The jury returned verdicts of guilty of murder in the first degree, guilty of first-degree burglary and guilty of felonious larceny of an automobile. The trial judge entered judgment imposing sentences of life imprisonment upon the verdict of guilty of murder in the first degree, fourteen years imprisonment upon the verdict of guilty of first-degree burglary and three years imprisonment upon the verdict of guilty of larceny of an automobile, the sentences for burglary and larceny of an automobile to run consecutively.

The defendant appealed to this Court as a matter of right from his sentence of life imprisonment and we allowed his Motion to Bypass the Court of Appeals on the burglary and larceny convictions on 4 April 1984.

*Rufus L. Edmisten, Attorney General, by Joan H. Byers, Assistant Attorney General, for the State.*

*Keith Bridges for the defendant-appellant.*

BRANCH, Chief Justice.

By his first assignment of error, defendant challenges the witness Donald Killian's in-court identification testimony. He contends that the circumstances under which the witness observed the person on Section House Road were conducive to misidentification. He further argues that a pretrial photographic identification procedure and a pretrial in-court confrontation were so impermissibly suggestive as to taint the witness's identification testimony at trial and to render inadmissible any evidence as to the photographic identification and the pretrial in-court confrontation.

This Court has consistently held that identification procedures which are so impermissibly suggestive as to give rise to a very substantial likelihood of misidentification violate a defendant's right to due process. *State v. Grimes*, 309 N.C. 606, 308 S.E. 2d 293 (1983); *State v. Harris*, 308 N.C. 159, 301 S.E. 2d 91 (1983). This Court employs a two-step process in evaluating such claims of denial of due process. First we must determine whether an impermissibly suggestive procedure was used in obtaining the out-of-court identification. If this question is answered in the negative, we need proceed no further. *State v. Leggett*, 305 N.C. 213, 287 S.E. 2d 832 (1982). If it is answered affirmatively, the second inquiry is whether, under all the circumstances, the suggestive procedures employed gave rise to a substantial likelihood of irreparable misidentification. *Id.*; *State v. Headen*, 295 N.C. 437, 245 S.E. 2d 706 (1978).

[1] We first address defendant's contention that the pretrial identifications were impermissibly suggestive. The test is whether the totality of the circumstances reveals a pretrial procedure so unnecessarily suggestive and conducive to irreparable mistaken identity as to offend fundamental standards of decency and justice. *State v. Grimes*, 309 N.C. 606, 308 S.E. 2d 293 (1983); *State v. Leggett*, 305 N.C. 213, 287 S.E. 2d 832 (1982).

The defendant contends that the pretrial photographic identification procedure was conducted in an impermissibly suggestive way. Defendant points to Mr. Killian's testimony that he was able to eliminate more than half of the photographs in the photographic lineup because of hair color or a lack of facial hair.

On *voir dire* the trial court concluded, after finding facts, that the photographic identification procedure did not violate defendant's due process rights. The trial court's findings of fact when supported by competent evidence are binding on this Court on appeal. *State v. Corbett*, 309 N.C. 382, 307 S.E. 2d 139 (1983). Those findings with regard to the photographic identification procedure were as follows:

> [T]hereafter he [Killian] went back on the 22nd of April, 1983 and that at that time the witness talked with Officer Setzer and that he was not aware at that time that anyone was in custody for the offense the defendant is charged for or with today; that Officer Setzer talked with the witness but in no way indicated to Mr. Killian the identity of any suspect which the Newton Police Department may have had in the matter; nine, that Officer Setzer asked the witness, Killian, to sit at his desk and placed before the witness a pictorial lineup consisting of eight photographs in color of eight white males all of whom had some facial hair and that Officer Setzer directed the witness not to pick up the photographs or touch them in any way; that the pictures were in a folder in which they were placed; that Officer Setzer requested the witness to observe the pictorial lineup, that the person suspected of taking the vehicle may be in the lineup or that the person may not be in the lineup; that Officer Setzer then left the presence of the witness, Killian and was gone for about ten to fifteen minutes and that approximately five minutes after the witness first observed the pictorial lineup, that he selected a photograph, number six, as being the photograph of the person that he observed on the unnamed street on . . . April 14, 1983.
>
> Ten, that the picture in the pictorial lineup, number six, is a picture of the defendant in this case, William Lee Hannah.

Our examination of the record evidence and the photographs used in the pretrial photographic procedure fails to disclose any substantial evidence of impermissible suggestiveness. To the contrary there is plenary evidence to support the trial judge's findings and conclusions that the photographic procedure did not violate defendant's due process rights.

[2]   We next consider defendant's contention that the identification made by the witness in the preliminary hearing was impermissibly suggestive because defendant was seated at the defense table and was wearing prison clothes.

We have held that the viewing of a defendant in a courtroom during varying stages of a criminal proceeding by witnesses who are offered to testify as to the identity of the defendant is not in and of itself such a confrontation as will taint an in-court identification unless other circumstances are shown which are so "unnecessarily suggestive and conducive to irreparable mistaken identification" as would deprive defendant of his due process rights. *State v. Covington*, 290 N.C. 313, 324, 226 S.E. 2d 629, 638 (1976); *State v. Bass*, 280 N.C. 435, 186 S.E. 2d 384 (1972).

The trial court's findings of fact with regard to the in-court confrontation were that:

thereafter the defendant appeared in the courtroom with trial proceedings now being held, at a probable cause hearing . . . on May 2, 1983, as indicated by the Court records . . . that a probable cause hearing was conducted and the defendant was present at the defense table and that the presence of the defendant at the defense table was for the purpose of the parties participating in a preliminary hearing and at that time the witness, Killian, observed the defendant at the hearing; that he had already made an identification of the defendant in the case from the pictorial lineup exhibited to him on April 22, 1983.

Defendant has shown no "other circumstances" which would convert the witness's view of defendant at the preliminary hearing into an unnecessarily suggestive confrontation. Further, there was ample evidence to support the trial judge's findings which in turn support his conclusion that the pretrial in-court identification was not unnecessarily suggestive or violative of defendant's due process rights. The trial court correctly ruled that the pretrial in-court confrontation was admissible.

Having determined that no impermissibly suggestive procedure was used in the courtroom confrontation, or in the photographic identification procedure, it follows that neither procedure could give rise to a "substantial likelihood of irreparable mis-

identification." *State v. Leggett*, 305 N.C. 213, 287 S.E. 2d 832 (1982).

[3] Even so, defendant argues that there was a substantial likelihood of misidentification because of the circumstances under which the witness observed a person on Section House Road on 14 April 1983. We find this contention to be without merit.

In this connection the trial court found that although Mr. Killian's opportunity to observe the man on Section House Road was somewhat impaired by darkness and rain, he viewed the man in the light of his headlights and was able to determine that the man appeared to be drunk. Mr. Killian observed the man for a period of time for the purpose of determining whether he needed help. He was able to see the right side of the man's face, and watched him long enough to see him walk from the front of the vehicle to the rear, open the trunk, get something out of the trunk, and close it. The court found that at one point Mr. Killian described the man he saw as weighing approximately 160 to 180 pounds; the witness later estimated the man's weight to be 110 to 120 pounds. The trial court found that the witness indicated that the man he observed was small and young, a little over five feet tall, with facial hair and carrying a leather wallet with a chain. At the photographic identification session, the witness selected defendant's picture five minutes after being shown a photographic lineup of eight men. Mr. Killian viewed the lineup only eight days after observing the man beside the car on Section House Road.

[4] We believe the facts as found by the trial court demonstrate that there was not a substantial likelihood of misidentification by the witness Killian. There was a reasonable possibility of observation sufficient to permit subsequent identification, although the period of observation was brief. Where such a possibility exists, the credibility of the witness and the weight to be given his identification testimony is for the jury to decide. *State v. Corbett*, 309 N.C. 382, 307 S.E. 2d 139 (1983); *State v. Miller*, 270 N.C. 726, 154 S.E. 2d 902 (1967).

[5] Defendant further contends that the district attorney's request for certain stipulations at the end of the *voir dire* on this issue had the effect of ensuring the unreliability of the witness's testimony. The district attorney, without advance warning and before the court and identification witness, tendered as a re-

quested stipulation the fact that the defendant's fingerprints were found in Mrs. Lehman's car. The defense counsel rejected the offer. Defendant argues that the district attorney's actions had the effect of bolstering the confidence of the identification witness, Killian. We find no merit in this argument. We note again that the witness had already identified defendant in a non-suggestive identification procedure and in the *voir dire*. We find no reasonable likelihood that the district attorney's offer of stipulation tainted the witness's in-court testimony.

Since we find the pretrial identification procedures free of the taint of impermissible suggestiveness, we hold that the trial court properly admitted the in-court identification of defendant by the witness Killian. We find no error in the trial court's allowing Killian to testify about the pretrial photographic identification procedure and no error in the admission of the photographs used in that procedure.

[6] The defendant next assigns as error the admission of testimony involving a head hair found in the sheet knotted around the victim's neck. SBI Agent Scott Worsham testified that a hair found within the folds of the bedsheet was "microscopically consistent" with a head hair taken from defendant. Worsham also testified that the hair found in the sheet was microscopically inconsistent with the victim's head hair. Defendant argues that the prejudicial effect of that testimony outweighed its probative value. He contends that since no evidence was presented concerning how frequently hair microscopically consistent with the defendant's would be found in the Caucasian population, the jury was free to speculate that that percentage was small. Defendant also argues that continued references to the knotted bedsheet were inflammatory and suggested sexual activity not supported by the evidence.

We reject defendant's arguments. This Court has consistently approved similar expert testimony regarding the comparison of hair samples. *See State v. Pratt,* 306 N.C. 673, 295 S.E. 2d 462 (1982); *State v. Barber,* 278 N.C. 268, 179 S.E. 2d 404 (1971). It is axiomatic that evidence is relevant if it has any logical tendency, however slight, to prove a fact in issue in the case. 1 Brandis on North Carolina Evidence § 77 (1982). Agent Worsham's testimony tended to place defendant in the victim's presence at the time of

the murder and the evidence is therefore relevant. The condition of the body when found is made no more inflammatory by the fact that a head hair consistent with the defendant's was found on the body. We overrule this assignment of error.

[7]   By his next assignment of error, defendant contends the trial court erred in admitting into evidence a pubic hair sample taken from him. During *voir dire* Agent Worsham testified about comparisons he had made between a pubic hair found on the victim's chest and known pubic hair samples taken from defendant. The trial court refused to allow the jury to hear evidence concerning the comparison of the hairs. Worsham was allowed to testify before the jury, however, without objection from defendant, about receiving a known pubic hair sample from defendant. The trial court later admitted the known sample into evidence over defendant's objection. Defendant contends the evidence had little probative value and was unduly prejudicial because allusions to sexual activities were again raised despite the absence of evidence of sexual activities.

Although it is not clear from the record why the trial court allowed defendant's known pubic hair sample into evidence while disallowing the comparison evidence, we do not believe defendant has shown that he was prejudiced by its admission. We have often stated that where there is abundant evidence to support the main contentions of the State, the admission of evidence, though technically incompetent, will not be held prejudicial where the defendant does not make it appear that he was prejudiced or that the admission of the evidence could have affected the result. *See, e.g., State v. Braswell,* 283 N.C. 332, 196 S.E. 2d 185 (1973); *State v. Williams,* 275 N.C. 77, 165 S.E. 2d 481 (1969). Given the other compelling evidence of defendant's guilt, we are not persuaded that the admission of this evidence affected the verdict.

[8]   The defendant finally assigns as error the admission into evidence of photographs showing the victim's nude body with a sheet tied around her neck. Defendant contends that continuing references to and pictures of the victim's body aroused inflammatory images of sexual activity in the minds of the jury even though no evidence of such activity was presented.

The State introduced three photographs showing the victim's body. The photographs were used to illustrate both the testimony

of law enforcement officers who testified about their observations of the crime scene and the testimony of the medical examiner. It is well settled that:

> Properly authenticated photographs of the body of a homicide victim may be introduced into evidence under instructions limiting their use to the purpose of illustrating the witness' testimony. Photographs are usually competent to be used by a witness to explain or illustrate anything that it is competent for him to describe in words. The fact that the photograph may be gory, gruesome, revolting or horrible does not prevent its use by a witness to illustrate his testimony.

*State v. Watson*, 310 N.C. 384, 397, 312 S.E. 2d 448, 457 (1984); *State v. Cutshall*, 278 N.C. 334, 347, 180 S.E. 2d 745, 753 (1971).

In this case, the trial court properly limited the use of the photographs to the purpose of illustrating the witness's testimony. The photographs were neither excessive in number nor unduly inflammatory. This assignment of error is overruled.

Having reviewed defendant's trial and convictions, we find no error.

No error.