STATE OF NORTH CAROLINA v. LEROY EDWARD HARLEE

No. 865SC783

(Filed 7 April 1987)

1. **Criminal Law §§ 34.5, 69— telephone conversation—evidence of defendant's guilt of other offense—admissibility to show identity**

   In a prosecution for first degree kidnapping, attempted armed robbery, and unauthorized use of a motor vehicle where defendant's identity as the gunman was the key issue, the trial court did not err in allowing a witness to testify that defendant had telephoned him about a month or so before the attempted robbery about "a stolen TV set," though the testimony indicated that defendant had committed another crime, since the testimony tended to support the witness's claim that he recognized defendant's voice and was thus admissible.

2. **Kidnapping § 1.2— abduction to facilitate attempted armed robbery—sufficiency of evidence**

   Evidence was sufficient to support a kidnapping verdict where it tended to show that defendant abducted his victim, a store employee, for the purpose of facilitating an attempted armed robbery with a dangerous weapon in that defendant abducted and threatened his victim with a shotgun in an effort to coerce a store manager into turning store receipts over to him.

APPEAL by defendant from *Stevens, Judge.* Judgments entered 12 March 1986 in Superior Court, NEW HANOVER County. Heard in the Court of Appeals 6 January 1987.

Defendant was convicted of first degree kidnapping, attempted armed robbery, and unauthorized use of a motor vehicle. In pertinent part the State's evidence was as follows:

Steven Derbyshire, the night manager of the U-Rent Store in Wilmington, testified that: On 1 November 1985 about 7:15 p.m. he was walking the store manager, Deborah Jones, to her car in the parking lot when a masked man, holding a shotgun and wearing an Army field jacket, faded bell bottom dungarees and white sneakers, confronted them and demanded to know which of the two of them "had the money." He told the gunman the money was

still in the store and the gunman then told him to meet him "at the corner of 10th and Dawson with the money" and grabbed Ms. Jones, pulled her into her car, and made her drive away. He recognized the voice of the gunman as being that of the defendant, who had worked at the store earlier; and he ran into the store and told the security guard to contact the police. Shortly thereafter the store telephone rang; the call was from Ms. Jones, who told him to follow the gunman's instructions; and after defendant got on the phone the witness told him that the police had been told about him abducting Ms. Jones, and defendant replied that he "had changed his plans." Deborah Jones, after corroborating the foregoing testimony, further testified that: After the gunman ordered her into the car she first drove to a dirt road and then to a nearby area, where they waited awhile before driving to a pay telephone, where at the gunman's direction she called the night manager. After she told Derbyshire to do what the gunman wanted, the defendant took the phone and said into it that there had been a change of plans, after which he told her that her "buddy" had just signed her "death warrant." Defendant then forced her back into her car, which he drove away. As they drove past a fast food restaurant a police car, soon joined by three more police cars, began following them, and defendant told her "you have had it now." She then grabbed the barrel of the shotgun defendant was holding, causing him to lose control of the car, which crashed into a parked car and a building. After getting out of the car she ran to one of the police cars and defendant ran into a nearby alley. Cecil Gurganious, the store security guard, testified that: He listened to the gunman's call to the store and heard him tell Derbyshire, "Well, you make sure you bring that money to 10th and Dawson. If you don't I will shoot this girl down in the street." A police officer who pursued the car testified that: After the wreck the gunman disappeared down an alley into an unlighted backyard; and that in a search of the surrounding area a green military field jacket was found and defendant, wearing faded jeans and white sneakers, was caught some blocks away on a fire escape. Wayne King, a store owner, identified the shotgun found in Ms. Jones' wrecked car as being a gun that he sold defendant some weeks earlier.

*Attorney General Thornburg, by Assistant Attorney General Elisha H. Bunting, Jr., for the State.*

*Appellate Defender Hunter, by Assistant Appellate Defender David W. Dorey, for defendant appellant.*

PHILLIPS, Judge.

[1]　In appealing defendant makes three contentions, none of which have merit. The first contention is that the court erred in permitting Derbyshire to testify that defendant telephoned him about a month or so before the attempted robbery about "a stolen TV set." The trial judge instructed the jury to consider the testimony only as tending to show that the witness heard the statement and to explain the conduct of the witness upon hearing the statement. Defendant argues that the testimony was inadmissible under Rule 404(b) of the N.C. Rules of Evidence and *State v. Mc-Clain*, 240 N.C. 171, 81 S.E. 2d 364 (1954) because it was about him committing another crime and tended only to show his bad character. But the evidence was relevant to an issue in the case and thus its admission was not forbidden by the rule or decision cited. *State v. Leggett*, 305 N.C. 213, 287 S.E. 2d 832 (1982). The defendant's identity as the gunman was the key issue in the case and that Derbyshire had received a telephone call from the defendant a month before the attempted robbery tended to support the witness's claim that he recognized defendant's voice and thus was admissible, even though the call also concerned a stolen TV set not involved in the charges he was tried for.

[2]　Defendant's next contention is that the evidence does not support the kidnapping verdict in that it does not show that he abducted Deborah Jones for the purpose of facilitating an armed robbery. The indictment alleged five purposes for the kidnapping, all approved by G.S. 14-39—"for the purpose of holding her for ransom, holding her as a hostage, using her as a shield, facilitating the commission of a felony, attempted armed robbery, and terrorizing her"—only one of which had to be proved for the kidnapping verdict to stand. *State v. Moore*, 315 N.C. 738, 340 S.E. 2d 401 (1986). Clearly, the evidence tends to show that defendant abducted Ms. Jones to facilitate the attempted robbery of the U-Rent Store with a dangerous weapon; for it tends to show that while still attempting to complete the robbery he abducted and

threatened Ms. Jones in an effort to coerce Derbyshire into turning the store's money over to him. An attempted robbery occurs when a person with the requisite intent does some overt act calculated to unlawfully deprive another of personal property; *State v. Irwin*, 304 N.C. 93, 282 S.E. 2d 439 (1981); and the evidence indicates that defendant had that intent and abducted Ms. Jones in an effort to effectuate it.

Defendant's final contention—that the trial judge erred in instructing the jury about a purpose for the abduction not stated in the indictment, to facilitate his flight—is not properly before us, because the instruction was not objected to. Rule 10(b)(2), N.C. Rules of Appellate Procedure. Even so we have reviewed it and have determined that the instruction was neither "plain error," *State v. Odom*, 307 N.C. 655, 300 S.E. 2d 375 (1983), nor prejudicial, since it did not deprive defendant of a fair trial and the evidence of defendant's guilt is clear, direct and overwhelming.

No error.

Judges ARNOLD and ORR concur.