STATE OF NORTH CAROLINA v. MICHAEL RANKINS

No. COA98-718

(Filed 15 June 1999)

## 1. Evidence— bias of witness—evidence excluded

The trial court erred in an armed robbery prosecution by precluding defendant from introducing evidence concerning the bias of a State's witness where the witness testified that there was no deal to allow him to plead guilty to a reduced charge in exchange for his testimony and the court would not allow defendant to present testimony by an inmate that the witness had stated in jail that he had made a deal with the State. Since this was the only witness directly tying defendant to the crime, this constituted reversible error.

## 2. Evidence— offer of proof—absence not fatal

The absence of an offer of proof to the exclusion of testimony concerning the bias of a State's witness was not fatal to defendant's argument where the court had specifically informed defense counsel that the record already included the basis of the anticipated testimony. It has been held that failure to make offers of proof is not necessarily fatal if the essential content of the excluded testimony and its significance are obvious from the record.

STATE v. RANKINS

[133 N.C. App. 607 (1999)]

### 3. Evidence— offer of proof—absence fatal

An assignment of error to the exclusion of testimony concerning the bias of the investigating offer was overruled where the record was not clear as to the anticipated testimony and both the officer and defendant were extensively questioned concerning an alleged history of ill-will.

### 4. Evidence— identification—photographic lineup—failure to object when identification made before jury

There was no error in an armed robbery prosecution in allowing testimony concerning a photographic identification of defendant where all of the photographs were of black men, facial hair varied, and the witness was not told that a suspect was in any of the groups. Moreover, assuming that the procedure was impermissibly suggestive, defendant waived the error by failing to object when the witness later identified him before the jury.

### 5. Grand Juries— copy of proceedings—denied

The trial court did not err in an armed robbery prosecution by denying defendant's motion for a copy of the grand jury proceedings in the case.

### 6. Sentencing— allocution—after sentence entered—denied

The trial court did not err when sentencing defendant for armed robbery by denying him the opportunity to speak in his own behalf when defendant made his request after the court had imposed sentence. The purpose of allocution is to afford defendant the chance to state any further information which the court might consider when determining sentence; in this case the request came too late to inform the court of mitigating factors relevant to sentencing or to plead for leniency. The court had asked whether defense counsel had anything else to say prior to sentencing and is not required to personally address defendant and ask if he wishes to make a statement. N.C.G.S. § 15A-1334(b).

Appeal by defendant from judgment entered 5 November 1997 by Judge Clifton W. Everett, Jr. in Chowan County Superior Court. Heard in the Court of Appeals 17 March 1999.

*Attorney General Michael F. Easley, by Assistant Attorney General David R. Minges, for the State.*

*Appellate Defender Malcolm Ray Hunter, Jr., by Assistant Appellate Defender Benjamin Sendor, for defendant-appellant.*

**STATE v. RANKINS**

[133 N.C. App. 607 (1999)]

HUNTER, Judge.

At trial, the State's evidence tended to show that at 2:30 p.m. on 14 March 1997, two men wearing ski masks entered the Royalty Finance ("Royalty") office in Edenton, North Carolina. One of the men was carrying a revolver. They told the people in the office to get on the floor and took approximately $1,400.00 from one of the front cash registers. No one in the office could identify either of the two men.

Bishop Ali, who runs BJ's Coffee Shop two doors down from Royalty, testified he observed two men pacing in front of his shop between 2:00 and 2:30 p.m. on the day in question. Mr. Ali identified one of the men as the defendant, Michael Rankins.

Melanie Young, defendant's probation officer on 14 March 1997, testified that defendant appeared in her office across the street from Royalty on that date asking if he had an appointment. When she responded that he did not, defendant appeared confused and suggested maybe the appointment he had in mind was with his attorney, W. Hackney High, Jr.

Cleaven White, defendant's accomplice, testified that, on 14 March 1997, defendant asked him if he wanted to make some money by robbing Royalty. They walked behind a building and cut holes in their toboggans. After stalling for awhile, Mr. White felt defendant stick a gun in his back and force him inside the office. Once inside Royalty, the two men told everyone it was a "stick-up," robbed everyone and left the premises. Defendant took the money but later gave Mr. White $250.00. Mr. White saw Captain Bonner of the Edenton Police Department a few weeks after the robbery and gave a statement, implicating defendant in the crime. He further testified he was not promised a deal for his testimony but admitted he hoped it would help him obtain a lesser sentence on an unrelated breaking and entering charge. The parties stipulated that Mr. White had prior convictions for felony larceny, felony possession of stolen goods, misdemeanor larceny, and one parole violation.

Captain Bonner was off-duty on 14 March 1997. He was called in at approximately 2:50 p.m. to respond to a 911 call received at 2:42 p.m. from Royalty. He talked with the victims and Mr. Ali and then proceeded to Mr. High's office where he saw defendant. Upon Mr. Ali's description of the two men, Captain Bonner requested a group of photographs to be delivered to him from the Chowan County

Detention Center. From the photographs, Mr. Ali formally identified defendant as one of the two men previously standing in front of BJ's. On 8 April 1997, upon the request of Mr. White, Captain Bonner went to the Detention Center to discuss the robbery. After reading Mr. White his rights, Captain Bonner took his statement which implicated defendant. Upon cross-examination, Captain Bonner responded that he remembered having arrested defendant on at least two other occasions for armed robbery but did not recall having been involved in any personal altercations with defendant. The State rested.

Defendant testified that he was at his girlfriend's home on the afternoon of 14 March 1997 and did not go to downtown Edenton on that day before 3:00 p.m. Defendant stated that after he had visited both his probation officer and his attorney, he walked to the Stop and Shop where he talked to Captain Bonner at 3:30 p.m. Captain Bonner told him about the robbery, patted him down and asked him to go with him. Defendant testified that he refused and returned to his attorney's office. On cross-examination, defendant admitted he had been convicted for armed robbery once but could not recall any other convictions.

Defendant was indicted on 12 May 1997 and was tried in Chowan County Superior Court beginning on 3 November 1997. He was convicted of one count of robbery with a firearm and sentenced to 167 to 210 months imprisonment. Defendant appeals that conviction.

[1] In his first assignment of error, defendant contends the trial court erred in precluding defendant from introducing evidence concerning bias of a prosecution witness, Cleaven White. During the State's case, defense counsel asked Mr. White, during cross-examination, whether he had discussed a deal with the State which would allow him to plead guilty to a reduced charge in exchange for his testimony against defendant. He responded that there was no deal. Defendant argues that the court's failure to allow him to present testimony by Michael White, a jail inmate, who wished to state that Cleaven White had told him in jail that he had made a deal with the State (one year in prison for all his pending charges—this armed robbery, a breaking and entering charge, and a parole violation), constituted reversible error. Defendant asserts that had the jury been allowed to hear Michael White's testimony, it might have doubted Cleaven White's credibility and discounted his entire testimony. Since Cleaven White was the only witness directly tying defendant to the crime, the jury could have found defendant not guilty. We agree with defendant's argument.

STATE v. RANKINS

[133 N.C. App. 607 (1999)]

In a similar case, *State v. Murray*, 27 N.C. App. 130, 218 S.E.2d 189 (1975), the State's witness denied, on cross-examination, that he had been offered any promises by the State for his testimony against defendant. The trial court refused, following *voir dire*, to allow defendant to present testimony of a witness who claimed the State's witness told him on the morning of the trial that "if he did not testify for the State that they would see to it that he did pull the maximum for his sentence." This Court held that:

> the question put to [State's witness] on cross-examination was clearly as to a matter tending to show his motive and interest in testifying against the defendant. Therefore, defendant was not bound by [State's witness's] answer but was entitled to prove the matter by other witnesses. The State's entire case depended solely upon [State's witness's] testimony. No other evidence connected defendant in any way with the crime charged. [State's witness's] credibility was thus the paramount matter for the jury to determine, and when the court excluded [defendant's witness's] testimony from the jury's consideration . . ., defendant suffered prejudicial error for which he is entitled to a new trial. (Citations omitted.)

*Murray*, 27 N.C. App. at 133, 218 S.E.2d at 191. We agree with the holding in *Murray*.

[2] Furthermore, we do not deem it fatal to defendant's argument that defense counsel failed to make specific offers of proof at trial. First, since the trial court specifically informed defense counsel that the record already included the basis of Michael White's anticipated testimony, it would be unfair to preclude defendant from raising the exclusion of the proffered testimony on appeal. Secondly, our Supreme Court has held that failure to make offers of proof is not necessarily fatal if "the 'essential content' of the excluded testimony and its significance are obvious" from the record. *State v. Hester*, 330 N.C. 547, 555, 411 S.E.2d 610, 615 (1992) (*citing State v. Simpson*, 314 N.C. 359, 370, 334 S.E.2d 53, 60 (1985)). For the foregoing reasons, we remand this case for a new trial.

[3] Even though we are remanding this case to the Chowan County Superior Court for a new trial on the issue set forth above, we have elected to address defendant's remaining assignments of error since they could each readily occur in the new trial.

Defendant contends the trial court erred in excluding the testimony of defendant's sister, Connie Sawyer, concerning the alleged

bias of Captain Bonner against defendant. Here, unlike the previous situation, the record is not clear as to the anticipated testimony of Ms. Sawyer, arguably another biased witness. "Ordinarily, where the evidence is excluded, the record must show the essential content or substance of the witness's testimony before we can determine whether the exclusion prejudiced defendant." *Hester*, 330 N.C. at 555, 411 S.E.2d at 615 (citations omitted). Captain Bonner and defendant both were questioned extensively concerning an alleged history of ill-will between the two men. We elect not to speculate as to the basis of Ms. Sawyer's testimony or whether its exclusion prejudiced defendant. This assignment of error is overruled.

**[4]** In his next assignment of error, defendant contends the trial court erred in denying his motion to suppress the photographic identification of defendant. The *voir dire* testimony of Captain Bonner indicates that he showed Mr. Ali three photographic lineups twenty to thirty minutes following the robbery. Each lineup contained six photographs of black men. Photographs of some men appeared in two of the three lineups; defendant's photograph appeared in all three. Defendant's photograph appeared in the same position in two of the three lineups—the top left corner.

Assuming *arguendo* that the procedure was impermissibly suggestive, "defendant waived that error by failing to object when the witness later identified him before the jury as the man he had picked out of the lineup." *State v. Hunt*, 324 N.C. 343, 355, 378 S.E.2d 754, 761 (1989). "Failure to object when identification is made before the jury is a waiver of the right to have the propriety of that identification considered by the appellate court." *Id.* However, pursuant to N.C. Gen. Stat. § 15A-1446(b) (1997), this Court may review the alleged error "affecting substantial rights in the interest of justice if it determines it appropriate to do so."

In *State v. Leggett*, 305 N.C. 213, 287 S.E.2d 832 (1982), defendant was the only person whose photograph was in both groups of photographs shown to the victim. The Supreme Court found that this, standing alone, was insufficient to show that the pretrial photographic identification was impermissibly suggestive and indicated that the courts should look at the "totality of the procedures employed." *Id.* at 222, 287 S.E.2d at 838. Here, as in *Leggett*, all the photographs in the groupings were of black men. In one grouping, all the men had facial hair; in the other two, it varied. Captain Bonner testified he did not tell Mr. Ali that a suspect was in any of the groups.

Based on the totality of these procedures, we conclude that the trial court committed no error in allowing testimony from Mr. Ali and Captain Bonner concerning the photographic identification of defendant by Mr. Ali.

[5] Next, defendant contends the trial court erred in denying his motion to obtain a copy of the grand jury proceedings in this case. N.C. Gen. Stat. § 15A-622 specifically states in part, "The contents of the petition and the affidavit shall not be disclosed." N.C. Gen. Stat. § 15A-622(h) (1997). "An accused in this jurisdiction has no right to obtain a transcript of the grand jury proceedings against him." *State v. Porter*, 303 N.C. 680, 689, 281 S.E.2d 377, 384 (1981). "Defendant is adequately protected by his right to object to improper evidence and cross-examine the witnesses presented against him at trial." *Id.* This assignment of error is also without merit.

[6] Finally, defendant contends the trial court erred in sentencing him without first affording him the opportunity to speak on his own behalf. The transcript reveals that after the jury had announced its verdict and the court had sentenced defendant, defendant asked if he could address the court. The court denied this request and defendant contends this refusal violated his statutory and constitutional right to allocution. N.C. Gen. Stat. § 15A-1334(b) (1997). We disagree.

The purpose of allocution is to afford defendant an opportunity to state any further information which the trial court might consider when determining the sentence to be imposed. N.C. Gen. Stat. § 15A-1334(b) expressly gives a non-capital defendant the right to "make a statement in his own behalf" at his sentencing hearing. However, "[i]t is clear that G.S. 15A-1334, while permitting a defendant to speak at the sentencing hearing, does not require the trial court to personally address the defendant and ask him if he wishes to make a statement in his own behalf." *State v. McRae,* 70 N.C. App. 779, 781, 320 S.E.2d 914, 915 (1984), *disc. review denied,* 313 N.C. 175, 326 S.E.2d 35 (1985) (*citing State v. Poole,* 305 N.C. 308, 289 S.E.2d 335 (1982)). *See also State v. Griffin,* 57 N.C. App. 684, 292 S.E.2d 156, *cert. denied,* 306 N.C. 560, 295 S.E.2d 477 (1982); *State v. Martin,* 53 N.C. App. 297, 280 S.E.2d 775 (1981). Here, the transcript reveals that, prior to sentencing defendant, the trial court addressed defense counsel and inquired: "Anything else you would like to say, Mr. High?" Mr. High responded, "No, Your Honor." Based on this response, the court pronounced sentence accordingly.

After the sentence had been entered, defendant vocalized his desire to address the court. Since the jury had already rendered its verdict and the court had already imposed sentence, the opportunity to "speak in his own behalf" had passed. At this point, it was too late in the proceedings to inform the court of mitigating factors relevant to sentencing or to plead for leniency. This assignment of error is overruled.

New trial.

Judges MARTIN and TIMMONS-GOODSON concur.