IN THE COURT OF APPEALS OF NORTH CAROLINA

2022-NCCOA-418

No. COA20-250

Filed 21 June 2022

Wake County, Nos. 15 CRS 217444, 18 CRS 001526

STATE OF NORTH CAROLINA

v.

NICODEMUS WRIGHT, Defendant.

Appeal by Defendant from judgment entered 18 September 2019 by Judge Michael A. Stone in Wake County Superior Court. Heard in the Court of Appeals 13 April 2021.

> *Attorney General Joshua H. Stein, by Assistant Attorney General Robert C. Ennis, for the State.*
>
> *Daniel J. Dolan for defendant-appellant.*

MURPHY, Judge.

¶ 1     An indictment must sufficiently allege all essential elements, or the facts underlying all essential elements, of an offense to put a defendant on notice as to the offense being charged in order to grant the trial court jurisdiction to hear a felony case. However, an indictment need not follow hyper-technical rules to be valid. Here, the trial court properly recognized the validity of the indictment, which sufficiently alleged the underlying facts essential for each element to apprise Defendant that he

was charged with a failure to notify the last registering sheriff of a change of address.

¶ 2        Jury instructions are subject to plain error review when a defendant fails to preserve an alleged instructional error for appellate review, requiring a showing that the alleged error had a probable impact of the jury's verdict as opposed to a possible impact.  Here, the trial court did not plainly err in instructing the jury regarding the State's burden of proof as it properly instructed that the State was required to prove all elements beyond a reasonable doubt.  Additionally, the trial court did not plainly err in instructing the jury on the elements of failure to notify the last registering sheriff of a change of address, even assuming it erred by not indicating that there must be a *willful* failure to notify the sheriff's office of a change of address, because such an error would not have had a probable impact on the jury's verdict due to the clear, accurate statement of the mens rea requirement immediately prior to the assumed error.

¶ 3        A motion to dismiss for insufficiency of the evidence should be denied if, when viewing the evidence in the light most favorable to the State, there is substantial evidence of each essential element of the offense.  Here, there was substantial evidence of each essential element of Defendant's failure to notify the last registering sheriff of a change of address and his attaining habitual felon status.

¶ 4        In non-capital cases, defendants have a statutory right to allocution when they assert that right prior to sentencing.  Here, because the trial court denied Defendant

his right to allocution after he clearly and repeatedly articulated his desire to exercise this right, we vacate the trial court's sentence and remand for a new sentencing hearing.

¶ 5    Finally, a petition for writ of certiorari is a discretionary writ that should only be allowed when the petition shows merit in the underlying issue. There can be no merit in an appeal regarding an underlying issue when the record does not show the order from which a defendant requests review was actually entered. An order is not considered entered where it has not been filed with the county clerk of court. Here, the civil judgment order for attorney fees for which Defendant seeks our review does not reflect that it was filed with the county clerk of court, and therefore there is no merit to the petition for writ of certiorari. We deny Defendant's petition for writ of certiorari and dismiss the portion of his appeal related to the civil judgment order for attorney fees.

## **BACKGROUND**

¶ 6    Defendant Nicodemus Wright was convicted of second-degree rape in 2006. In November 2011, following his release from prison, he was required to enroll in the sex offender and public protection registry and required to inform his local sheriff's office of his address in accordance with N.C.G.S. § 14-208.7. In early July 2015, Defendant's registered address was a men's shelter in Raleigh; however, on 9 July 2015, Defendant was taken to a month-long drug treatment program in Goldsboro by

his post-release supervisor. Defendant left this program after two days and did not return to the men's shelter. From 11 July 2015, when Defendant left the drug treatment program, until his eventual arrest on 4 August 2015, Defendant did not update his registered address. As a result, Defendant's registered address remained listed as the men's shelter in Raleigh, but he did not stay there at any point after he left the program.

¶ 7    Defendant's former girlfriend, Linda Burt, testified that Defendant began staying at her home two days after his departure from the program, kept his clothes and books at her home during this time period, and was staying with her at the time of his arrest.

¶ 8    Following the State's evidence, Defendant made motions to dismiss on the basis of the indictment being fatally defective and for insufficiency of the evidence. Specifically, Defendant alleged that the indictment failed to state explicitly that he was required to register as a sex offender and to notify the sheriff's office of a move within three days. The indictment read:

> THE JURORS FOR THE STATE UPON THEIR OATH
> PRESENT that on or about the [4 August] 2015, in Wake
> County, the defendant named above unlawfully, willfully
> and feloniously did violate the North Carolina Sex
> Offender and Public Protection Registration Program, by
> having been convicted in Wake County Superior Court on
> 18th day of September 2006 of Second[-]Degree Rape, a
> reportable offense and failing to notify the Sheriff of Wake
> County of a change of address as required by [N.C.G.S.] §

14-208.9. This act was done in violation of [N.C.G.S.] § 14-208.11(A)(2)[.]

The trial court denied the motions.

¶ 9        Defendant then presented evidence. Defendant testified that he understood his obligation to notify his local sheriff's office of any address change and he had consistently updated his address. Defendant testified on cross-examination that, in 2011, he had acknowledged his understanding of his obligations regarding the registry in writing. Additionally, Defendant testified that the Goldsboro program had registered him in Goldsboro and that he never lived with his girlfriend, instead claiming he stayed in Goldsboro until around 2 August 2015.

¶ 10        Defendant also called his post-release officer to testify. Defendant's post-release officer confirmed that a program officer had indicated that the program was going to notify the Wayne County Sheriff's Office of Defendant's change of address, but he was unaware if this actually occurred. Defendant renewed his motions to dismiss at the conclusion of all evidence, and the trial court again denied the motions. The trial court instructed the jury, and the jury found Defendant guilty of violating the sex offender and public protection registry.

¶ 11        Defendant was then tried for having attained habitual felon status. Two prior convictions for attempted robbery and attempted criminal sale of a controlled substance in the fifth degree from New York were used as the first two underlying

felonies, with the third being his second-degree rape conviction in North Carolina. At the conclusion of the State's evidence, Defendant made a motion to dismiss, which the trial court denied. Defendant was found guilty of attaining habitual felon status, and the trial court proceeded to sentencing. At sentencing, the following exchange occurred:

> THE COURT: All right. Stand up, [Defendant]. Anything you want to say?
>
> THE DEFENDANT: Yes. I need – to say what I want to say, I need to get my paperwork.
>
> THE COURT: Well, we're not going to do that. Anything you want to say to me right now before you're sentenced?
>
> THE DEFENDANT: Yes. I asked to get it before I even came out here, and they rushed me and said, "Come on now." Please. I mean, this is my chance to speak to you.
>
> THE COURT: Anything you want to say to me before you're sentenced?
>
> THE DEFENDANT: Yes, I do. I have it right there in –
>
> THE COURT: All right. Your papers aren't relevant right now. All right. Moving to sentencing, Madam Clerk, it is a class C on the habitual felon status, record level two. The sentence will be in the presumptive range. He's sentenced to a minimum term of 83 months, maximum terms of 112 months active time. He's to receive credit for all pretrial confinement. All right. Good luck to you, [Defendant] . . . .
>
> MS. STROMBOTNE: Sorry, Judge. I didn't mean to interrupt. I would like to enter notice of appeal in open court.

THE COURT: All right. Enter notice of appeal.

THE DEFENDANT: I don't just – I don't get to say anything now to you, Judge?

THE COURT: No.

On 18 September 2019, the trial court imposed an active sentence of 83 to 112 months. The criminal judgment provided for $0.00 in attorney fees. On 25 October 2019, a *Non-Capital Criminal Case Trial Level Fee Application Order for Payment Judgment Against Indigent* was signed by the trial court, purporting to approve a civil judgment for attorney fees in the amount of $3,562.50.

## ANALYSIS

On appeal, Defendant argues (A) "[t]he judgment must be vacated because the indictment charging a violation of the sex offender and public protection registry fails to allege three essential elements, depriving the trial court of jurisdiction and violating [Defendant's] right to due process"; (B) "[Defendant] must receive a new trial because the trial court plainly erred by [(1)] failing to instruct the jury as to an element of an offense and [(2)] by misstating an element of an offense"; (C) "[t]he trial court erroneously denied [Defendant's] motion to dismiss the charge of a violation of the sex offender and public protection registry and the charge of attaining habitual felon status because there was not substantial evidence of either charge"; (D) "[t]his case must be remanded for a new sentencing hearing because the trial court deprived [Defendant] of his right to allocution"; and (E) "[t]he trial court erred by ordering

[Defendant] to pay attorney[] fees and the attorney appointment fee without affording him notice and an opportunity to be heard."[1]

## A. Sufficiency of the Indictment for Failure to Notify the Last Registering Sheriff of a Change of Address

¶ 14        Defendant contends the indictment fails to sufficiently allege any of the three essential elements of failure to notify the last registering sheriff of a change of address and the trial court therefore lacked jurisdiction to enter the judgment. The State responds that the Defendant is employing a hyper-technical reading of the indictment and that a plain reading reveals the essential elements are laid out, even if not in the most explicit terms.

> It is well settled that a valid bill of indictment is essential to the jurisdiction of the trial court to try an accused for a felony. Lack of jurisdiction in the trial court due to a fatally defective indictment requires the appellate court to arrest judgment or vacate any order entered without authority. The issue of subject matter jurisdiction may be raised at any time, even for the first time on appeal. The subject matter jurisdiction of the trial court is a question of law, which this Court reviews *de novo* on appeal.

*State v. Barnett*, 223 N.C. App. 65, 68, 733 S.E.2d 95, 97-98 (2012) (marks and citations omitted).

¶ 15        "The North Carolina Constitution guarantees that, 'in all criminal

---

[1] Defendant has also filed a petition for writ of certiorari regarding this issue, which we address in our discussion of this issue.

prosecutions, every person charged with [a] crime has the right to be informed of the accusation.'" *State v. Williams*, 368 N.C. 620, 623, 781 S.E.2d 268, 270 (2016) (quoting N.C. Const. art. I, § 23). For felonies, this often occurs by indictments, which must contain

> [a] plain and concise factual statement in each count which, without allegations of an evidentiary nature, asserts facts supporting every element of a criminal offense and the defendant's commission thereof with sufficient precision clearly to apprise the defendant or defendants of the conduct which is the subject of the accusation.

N.C.G.S. § 15A-924(a)(5) (2021). Our Supreme Court has interpreted this statute, holding "that it is not the function of an indictment to bind the hands of the State with technical rules of pleading, and that we are no longer bound by the ancient strict pleading requirements of the common law." *Williams*, 368 N.C. at 623, 781 S.E.2d at 270-71. "Instead, contemporary criminal pleading requirements have been designed to remove from our law unnecessary technicalities which tend to obstruct justice." *Id.* at 623, 781 S.E.2d at 271 (marks omitted). Our statutes reflect this, providing:

> Every criminal proceeding by warrant, indictment, information, or impeachment is sufficient in form for all intents and purposes if it express[es] the charge against the defendant in a plain, intelligible, and explicit manner; and the same shall not be quashed, nor the judgment thereon stayed, by reason of any informality or refinement, if in the bill or proceeding, sufficient matter appears to enable the court to proceed to judgment.

N.C.G.S. § 15-153 (2021).

¶ 16     Our caselaw has elaborated on what indictments must contain based on contemporary standards:

> In order to be valid and thus confer jurisdiction upon the trial court, an indictment charging a statutory offense must allege all of the essential elements of the offense. The indictment is sufficient if it charges the offense in a plain, intelligible and explicit manner. Indictments need only allege the ultimate facts constituting each element of the criminal offense and an indictment couched in the language of the statute is generally sufficient to charge the statutory offense. While an indictment should give a defendant sufficient notice of the charges against him, it should not be subjected to hyper technical scrutiny with respect to form. The general rule in this State and elsewhere is that an indictment for a statutory offense is sufficient, if the offense is charged in the words of the statute, either literally or substantially, or in equivalent words.

*Barnett*, 223 N.C. App. at 68-69, 733 S.E.2d at 98 (marks and citations omitted).

¶ 17     Here, Defendant challenges his indictment for failure to notify the last registering sheriff of his change of address. This offense is described in N.C.G.S. § 14-208.11(a)(2), which states, in relevant part, "[a] person required by this Article to register who willfully does . . . the following is guilty of a Class F felony: . . . Fails to notify the last registering sheriff of a change of address as required by this Article." N.C.G.S. § 14-208.11(a)(2) (2021). The obligation to notify the last registering sheriff of a change of address appears in N.C.G.S. § 14-208.9(a), which states, in relevant part, "[i]f a person required to register changes address, the person shall report in

person and provide written notice of the new address not later than the third business day after the change to the sheriff of the county with whom the person had last registered." N.C.G.S. § 14-208.9(a) (2021).

¶ 18        Based on these statutes, we have previously held that the three essential elements of the failure to notify the last registering sheriff of a change of address under N.C.G.S. § 14-208.11(a)(2) are "(1) the defendant is a person required to register; (2) the defendant changes his or her address; and (3) the defendant fails to notify the last registering sheriff of the change of address within three business days of the change." *Barnett*, 223 N.C. App. at 69, 733 S.E.2d at 98.

¶ 19        Here, the indictment reads:

> THE JURORS FOR THE STATE UPON THEIR OATH PRESENT that on or about the [4 August] 2015, in Wake County, the defendant named above unlawfully, willfully and feloniously did violate the North Carolina Sex Offender and Public Protection Registration Program, by having been convicted in Wake County Superior Court on 18th day of September 2006 of Second[-]Degree Rape, a reportable offense and failing to notify the Sheriff of Wake County of a change of address as required by [N.C.G.S.] § 14-208.9. This act was done in violation of [N.C.G.S.] § 14-208.11(A)(2)[.]

We analyze each of the essential elements separately below.

**1. Required to Register**

¶ 20        Defendant first contends that, like in *Barnett*, the indictment does not explicitly state Defendant was required to register. The State responds that, unlike

the indictment in *Barnett*, the indictment here instead provides the "facts indicating

why it would be a crime for Defendant to 'fail to provide written notice or notify the .

. . Sheriff's Department [sic] within three business days after a change of address.'"

*Id.* at 69, 733 S.E.2d at 98-99. We hold the first element is sufficiently alleged here.

¶ 21          In *Barnett*, we assessed the validity of an indictment that read:

> The jurors for the State upon their oath present that on or
> about 8 June 2010 and in Gaston County the defendant
> named above unlawfully, willfully and feloniously did fail
> to provide written notice or notify the Gaston County
> Sheriff's Department [sic] within three business days after
> a change of address as required by the North Carolina
> General Statute 14–208.9.

*Id.* at 69, 733 S.E.2d at 98. We stated:

> While the indictment substantially tracks the statutory
> language set forth in [N.C.G.S.] § 14–208.9(a) with respect
> to the second and third elements of the offense, it makes no
> reference to the first essential element of the offense, *i.e.*,
> that Defendant be "a person required to register." *The
> indictment does not allege that Defendant is a registered sex
> offender, nor any facts indicating why it would be a crime
> for Defendant to "fail to provide written notice or notify the
> Gaston County Sheriff's Department [sic] within three
> business days after a change of address*." Moreover, the
> State's contention that the indictment language "as
> required by the North Carolina General Statute 14–208.9"
> was adequate to "put Defendant on notice of the charge[]
> and [] inform[] him with reasonable certainty the nature of
> the crime charged" is unavailing, as "it is well established
> that "'[m]erely charging in general terms a breach of [a]
> statute and referring to it in the indictment is not
> sufficient'" to cure the failure to charge 'the essentials of
> the offense' in a plain, intelligible, and explicit manner."

*Id*. at 69-70, 733 S.E.2d at 98-99 (emphasis added). We ultimately concluded that the indictment was insufficient to confer subject matter jurisdiction on the trial court and vacated the defendant's conviction without prejudice to re-prosecution. *Id*. at 72, 733 S.E.2d at 100.

¶ 22 Although, like in *Barnett*, the indictment here does not explicitly state that Defendant was required to register, the indictment instead provides the factual basis for the requirement that he register—his conviction of the reportable offense of second-degree rape—and therefore is distinguishable from *Barnett* and complies with N.C.G.S. § 15A-924(a)(5) and N.C.G.S. § 15-153. *See State v. Rambert*, 341 N.C. 173, 176, 459 S.E.2d 510, 512 (1995) ("[I]ndictments need only allege the ultimate facts constituting each element of the criminal offense.").

¶ 23 The indictment alleges that Defendant was previously convicted of second-degree rape in 2006 and pleads facts that constitute the first essential element of failure to notify the last registering sheriff of a change of address—that Defendant was required to register. This satisfies the requirements of our statutes, caselaw, and Constitution.

**2. Change of Address**

¶ 24 Defendant next contends the indictment must have specifically alleged that Defendant changed his address. The State responds that the indictment necessarily indicates that a change in address occurred. We hold that the indictment here

sufficiently alleges the second essential element of failing to register.

¶ 25      In *State v. Reynolds*, we upheld an indictment that did not state the defendant

changed his address and instead simply stated:

> [A]s a person required by Article 27A of Chapter 14 of the
> General Statutes to register as a sex offender, *fail to notify*
> *the last registering Sheriff, Graham Atkinson, of an address*
> *change* by failing to appear in person and provide written
> notice of his address after his release from incarceration[.]

*State v. Reynolds*, 253 N.C. App. 359, 367-68, 800 S.E.2d 702, 708 (2017) (emphasis

added), *disc. rev. denied*, 370 N.C. 693, 811 S.E.2d 159 (2018).  In *Reynolds*, we upheld

the indictment as it "substantially track[ed] the language of . . . the statute under

which [the defendant] was charged, thereby providing defendant adequate notice."

*Id.* (quoting *Williams*, 368 N.C. at 626, 781 S.E.2d at 273).

¶ 26      Here, like in *Reynolds*, the indictment substantially tracks the language of

N.C.G.S. § 14-208.11(a)(2) by stating "the defendant named above unlawfully,

willfully and feloniously did violate the North Carolina Sex Offender and Public

Protection Registration Program, by . . . *failing to notify the Sheriff of Wake County*

*of a change of address as required by [N.C.G.S.] § 14-208.9*."  (Emphasis added).

N.C.G.S. § 14-208.11(a)(2) states "[a] person required by this Article to register who

willfully does any of the following is guilty of a Class F felony: . . . Fails to notify the

last registering sheriff of a change of address as required by this Article."  N.C.G.S. §

14-208.11(a)(2) (2021).   The indictment sufficiently alleges the second essential

element of failure to notify the last registering sheriff of a change of address—that Defendant changed his address—by mirroring the statutory language.

**3. Update Address within Three Days**

¶ 27        Finally, Defendant contends the indictment fails to indicate that the change in address occurred within three business days. He argues this, in part, because the change in address is not sufficiently indicted; however, given our holding that the second element is sufficiently alleged, we need not address this portion of Defendant's argument here.

¶ 28        To the extent that Defendant challenges the lack of the inclusion of "three business days" in the indictment, we have previously addressed this issue in *State v. McLamb*, 243 N.C. App. 486, 777 S.E.2d 150 (2015). In *McLamb*, we held:

> [T]he indictment in this case, which alleged "[the] defendant . . . did, as a person required by Article 27A of Chapter 14 of the General Statutes to register, fail[] to notify the last registering sheriff of a change of address in that he moved from 1134 Renfrow Road in Clinton, North Carolina, on or about [18 December] 2012 to 206 Smith Key Lane in Clinton, North Carolina without notifying the Sampson County Sheriff[,]" was couched in the language of the statute and sufficiently alleged the third element of the offense. To hold otherwise would be to subject the indictment to hyper technical scrutiny where in this case, over a period of months, [the] defendant failed to give any notice to the sheriff of his change of address.

*Id*. at 490, 777 S.E.2d at 152-53. Although Defendant's failure to notify the Wake County Sheriff's Office here did not occur over a period of months, *McLamb's* holding

is equally applicable here as Defendant did not update his address for 24 days at the least, which far outlasts the statutory timeframe of three business days. Like the argument in *McLamb*, Defendant's hyper-technical argument fails. Defendant's indictment sufficiently alleged the third essential element of failure to notify the last registering sheriff of a change of address—that Defendant failed to notify the Wake County Sheriff's Office of his change of address within three business days of the change.

¶ 29 As a result, the indictment sufficiently alleged all three essential elements, and the trial court had jurisdiction over the case. While the indictment could have been more explicit as a best practice, the indictment here was sufficient to provide Defendant notice of the charge against him, and we will not subject it to hyper-technical scrutiny. *See Barnett*, 223 N.C. App. at 68, 733 S.E.2d at 98 (marks and citations omitted) ("While an indictment should give a defendant sufficient notice of the charges against him, it should not be subjected to hyper technical scrutiny with respect to form.").

## B. Plain Error in Jury Instruction

¶ 30 Defendant contends the trial court committed plain error in improperly instructing the jury on the elements of failing to update an address when,

> [e]arly in the instruction for the offense of violating the sex offender and public protection registry, the trial court did not instruct the jury that the prosecution had to prove

> beyond a reasonable doubt that [Defendant] changed his
> address.

Defendant also contends the trial court erroneously instructed that Defendant must have willfully changed his address rather than willfully failed to report his change of address, when

> [i]n the final mandate, the trial court instructed the jury that if it found beyond a reasonable doubt that "the defendant willfully changed the defendant's address and failed to provide written notice of the defendant's new address in person at the Sheriff's Office no later than three business days after the change of address to the Sheriff's Office in the county with whom the defendant had last registered, it would be [their] duty to return a verdict of guilty."

¶ 31        "Whether a jury instruction correctly explains the law is a question of law, reviewable by this Court *de novo*." *State v. Barron*, 202 N.C. App. 686, 694, 690 S.E.2d 22, 29, *disc. rev. denied*, 364 N.C. 327, 700 S.E.2d 926 (2010). "This Court reviews jury instructions contextually and in its entirety." *See State v. Glynn*, 178 N.C. App. 689, 693, 632 S.E.2d 551, 554 (marks omitted), *appeal dismissed*, 360 N.C. 651, 637 S.E.2d 180 (2006). "When reviewed as a whole, isolated portions of a charge will not be held prejudicial when the charge as a whole is correct. The fact that isolated expressions, standing alone, might be considered erroneous will afford no ground for a reversal." *Id.* (marks omitted). Generally, "an error in jury instructions is prejudicial and requires a new trial only if 'there is a reasonable possibility that, had

the error in question not been committed, a different result would have been reached

at the trial out of which the appeal arises.'" *State v. Castaneda*, 196 N.C. App. 109,

116, 674 S.E.2d 707, 712 (2009) (quoting N.C.G.S. § 15A-1443(a) (2007)). However,

we employ a more demanding standard of prejudice when we review an unpreserved

issue for plain error:

> [T]he North Carolina plain error standard of review applies only when the alleged error is unpreserved, and it requires the defendant to bear the heavier burden of showing that the error rises to the level of plain error. To have an alleged error reviewed under the plain error standard, the defendant must specifically and distinctly contend that the alleged error constitutes plain error. Furthermore, plain error review in North Carolina is normally limited to instructional and evidentiary error.

*State v. Lawrence*, 365 N.C. 506, 516, 723 S.E.2d 326, 333 (2012) (marks and citations

omitted); *see also* N.C. R. App. P. 10(a)(4) (2022). Plain error arises when the error is

"'so basic, so prejudicial, so lacking in its elements that justice cannot have been

done[.]'" *State v. Odom*, 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983) (quoting *United*

*States v. McCaskill*, 676 F.2d 995, 1002 (4th Cir.), *cert. denied*, 459 U.S. 1018, 74 L.

Ed. 2d. 513 (1982)). "Under the plain error rule, [a] defendant must convince this

Court not only that there was error, but that absent the error, the jury probably would

have reached a different result." *State v. Jordan*, 333 N.C. 431, 440, 426 S.E.2d 692,

697 (1993).

**1. Burden of Proof**

¶ 32          Here, the first error alleged by Defendant—that the trial court erred in failing to instruct the jury that the prosecution had to prove that Defendant changed his address beyond a reasonable doubt—is undermined by the transcript. The instructional language that Defendant refers to is:

> [D]efendant has been charged with willfully failing to comply with the Sex Offender Registration law. For you to find [] [D]efendant guilty of this offense, *the State must prove three things beyond a reasonable doubt.* First, that [] [D]efendant was a resident of North Carolina. Second, that [] [D]efendant had previously been convicted of a reportable offense for which [] [D]efendant must register. If you find beyond a reasonable doubt that on [18 September 2006], in Wake County Superior Court, [] [D]efendant was convicted of second-degree rape, then this would constitute a reportable offense for which [] [D]efendant must register. And, third, [] [D]efendant willfully failed to provide written notice of a change of address in person at the Sheriff's Office no later than three business days after the change of address to the Sheriff's Office in the county with whom the defendant had last registered.

(Emphasis added).

¶ 33          As an initial matter, the instruction provided indicates that all of the elements listed must be proven beyond a reasonable doubt. Additionally, the paragraphs before and after the instruction make abundantly clear that the elements must be proven beyond a reasonable doubt:

> [D]efendant has entered a plea of not guilty. The fact that [] [D]efendant has been indicted and charged is no evidence of guilt. Under our system of justice, when a defendant

pleads not guilty, the defendant is not required to prove the defendant's innocence. [] [D]efendant is presumed to be innocent. *The State must prove to you that [] [D]efendant is guilty beyond a reasonable doubt.* A reasonable doubt is a doubt based on reason and common sense, arising out of some or all of the evidence that has been presented, or lack or insufficiency of the evidence, as the case may be. Proof beyond a reasonable doubt is proof that fully satisfies or entirely convinces you of [D]efendant's guilt.

. . . .

If you find from the evidence *beyond a reasonable doubt* that on or about the alleged date, [] [D]efendant was a resident of North Carolina, that [] [D]efendant had previously been convicted of a reportable offense for which [] [D]efendant must register, and that [] *[D]efendant willfully changed [] [D]efendant's address* and failed to provide written notice of [] [D]efendant's new address in person at the Sheriff's Office no later than three business days after the change of address to the Sheriff's Office in the county with whom [] [D]efendant had last registered, it would be your duty to return a verdict of guilty. *If you do not so find or have a reasonable doubt* as to one or more of these things, it would be your duty to return a verdict of not guilty.

(Emphases added). In light of the explicit and repeated instructions that the jury must be convinced beyond a reasonable doubt, we find no error, much less plain error, under Defendant's first argument regarding jury instructions. *See, e.g., Glynn*, 178 N.C. App. at 694, 632 S.E.2d at 555 ("Taken as a whole, the trial court's clarifying instructions properly set out the elements of the crime and did not lessen the State's burden of proof. [The] [d]efendant's assignment of error is overruled.").

**2. Mens Rea**

¶ 34        Defendant's second plain error argument—that the trial court erroneously instructed that Defendant must have willfully changed his address rather than willfully failed to report his change of address—is based on the following instruction[2]:

> If you find from the evidence beyond a reasonable doubt that on or about the alleged date, [] [D]efendant was a resident of North Carolina, that [] [D]efendant had previously been convicted of a reportable offense for which [] [D]efendant must register, and [] [D]efendant *willfully changed [] [D]efendant's address and failed to provide written notice* of [] [D]efendant's new address in person at the Sheriff's Office no later than three business days after the change of address to the Sheriff's Office in the county with whom [] [D]efendant had last registered, it would be [your] duty to return a verdict of guilty.

(Emphasis added).  Defendant contends:

> The final mandate erroneously instructed the jury that [it] must find that [Defendant] willfully changed his address, not that he willfully failed to report his change of address. There is a significant difference between willfully changing an address and failing to report the change, as opposed to changing an address and willfully failing to report the change.  The trial court's instruction misstated the *mens rea* requirement that the [General Assembly] has imposed on the offense.  The erroneous instructions were confusing and they lowered the State's burden of proof.

---

[2] We note that this portion of the jury instruction verbatim tracks the pattern jury instruction for failure to notify the last registering sheriff of a change of address.  *See* N.C.P.I.—Crim. 207.75 (2021).  Although pattern jury instructions "have neither the force nor the effect of law, [our Supreme Court has] often approved of jury instructions that are consistent with the pattern instructions."  *State v. Walston*, 367 N.C. 721, 731, 766 S.E.2d 312, 318-19 (2014) (marks and citations omitted).

¶ 35        If the jury interpreted the instruction in the manner suggested by Defendant,[3]

assuming this was an error, such an erroneous instruction did not constitute plain

error because it was not sufficiently prejudicial.  The immediately preceding portion

of the jury instructions provided:

> [D]efendant has been charged with willfully failing to
> comply with the Sex Offender Registration law.  For you to
> find [] [D]efendant guilty of this offense, the State must
> prove three things beyond a reasonable doubt.  First, that
> [] [D]efendant was a resident of North Carolina.  Second,
> that [] [D]efendant had previously been convicted of a
> reportable offense for which [] [D]efendant must register.
> If you find beyond a reasonable doubt that on [18
> September 2006], in Wake County Superior Court, []
> [D]efendant was convicted of second-degree rape, then this
> would constitute a reportable offense for which the
> defendant must register.  *And, third, [] [D]efendant
> willfully failed to provide written notice* of a change of
> address in person at the Sheriff's Office no later than three
> business days after the change of address to the Sheriff's
> Office in the county with whom [] [D]efendant had last
> registered.

(Emphasis added).  Considering this prior instruction, the jury was informed that the

Defendant must have willfully failed to provide written notice of the change of

---

[3] We believe that another logical interpretation of this instruction would be for "willfully" to modify both the change of address *and* failure to provide written notice of the new address.  If this were how the jury interpreted this language, there would be no prejudicial error as such an interpretation would increase the showing required by the State to attain a conviction.  *See State v. Farrar*, 361 N.C. 675, 679, 651 S.E.2d 865, 867 (2007) ("[T]he trial court's charge to the jury in this case [benefited] [the] defendant, because the instructions required the State to prove more elements than those alleged in the indictment. Therefore, there was no prejudicial error in the instructions.").

address. *See, e.g., State v. Harris,* 222 N.C. App. 585, 590, 730 S.E.2d 834, 838 ("Both instructions reiterated multiple times that the State must prove that [the] *defendant* was the perpetrator of each of the crimes. Given in connection with the entire jury instruction, the trial court's jury instruction substantively included an instruction regarding identity. [The] [d]efendants cannot show that the trial court's failure to give a separate instruction on identity beyond that included in the armed robbery instruction caused the jury to reach a verdict convicting [the] defendants that it probably would not have reached had a separate instruction been given."), *disc. rev. denied sub nom*, *State v. Whitaker*, 366 N.C. 413, 736 S.E.2d 175 (2012), *cert. denied*, 569 U.S. 952, 185 L. Ed. 2d 876 (2013). Additionally, we "presume[] that jurors follow the trial court's instructions." *State v. Steen*, 352 N.C. 227, 249, 536 S.E.2d 1, 14 (2000), *cert. denied*, 531 U.S. 1167, 148 L. Ed. 2d 997 (2001). Thus, we presume the jury interpreted the allegedly unclear instruction in conjunction with the instruction clearly indicating that Defendant must have willfully failed to provide written notice. When these two portions are read together, the jury instructions required the jury to find a willful failure to provide written notice of a change in address. Even assuming this instruction was erroneous, it was not prejudicial as it was not probable that any lack of clarity as to what "willfully" modified impacted this jury's verdict. Instead, it was resolved by the prior jury instructions.

¶ 36          The trial court did not commit plain error when instructing the jury.

### C. Motion to Dismiss for Insufficient Evidence

¶ 37    Defendant contends the trial court also improperly denied his motion to dismiss the charge of failure to notify the last registering sheriff of a change of address because there was insufficient evidence that Defendant willfully failed to notify the Wake County Sheriff's Office of the change in address. Defendant also argues the trial court erred as there was insufficient evidence that Defendant committed two of the underlying felonies used to establish that he attained habitual felon status.

¶ 38    "This Court reviews the trial court's denial of a motion to dismiss *de novo*." *State v. Smith*, 186 N.C. App. 57, 62, 650 S.E.2d 29, 33 (2007). "'Upon [a] defendant's motion for dismissal, the question for the Court is whether there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of [the] defendant's being the perpetrator of such offense. If so, the motion is properly denied.'" *State v. Fritsch*, 351 N.C. 373, 378, 526 S.E.2d 451, 455 (quoting *State v. Barnes*, 334 N.C. 67, 75, 430 S.E.2d 914, 918 (1993)), *cert. denied*, 531 U.S. 890, 148 L. Ed. 2d 150 (2000). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. Smith*, 300 N.C. 71, 78-79, 265 S.E.2d 164, 169 (1980). "In making its determination, the trial court must consider all evidence admitted, whether competent or incompetent, in the light most favorable to the State, giving the State

the benefit of every reasonable inference and resolving any contradictions in its favor." *State v. Rose*, 339 N.C. 172, 192, 451 S.E.2d 211, 223 (1994), *cert. denied*, 515 U.S. 1135, 132 L. Ed. 2d 818 (1995).

> Circumstantial evidence may withstand a motion to dismiss and support a conviction even when the evidence does not rule out every hypothesis of innocence. If the evidence presented is circumstantial, the court must consider whether a reasonable inference of [the] defendant's guilt may be drawn from the circumstances. Once the court decides that a reasonable inference of [the] defendant's guilt may be drawn from the circumstances, then it is for the jury to decide whether the facts, *taken singly or in combination*, satisfy [it] beyond a reasonable doubt that the defendant is actually guilty.

*Fritsch*, 351 N.C. at 379, 526 S.E.2d at 455 (marks and citation omitted).

**1. Sufficient Evidence of Defendant's Failure to Notify the Last Registering Sheriff of a Change of Address**

¶ 39 Defendant argues the evidence of his willful failure to notify the Wake County Sheriff's Office of his change of address was insufficient because he was involuntarily moved to another county for his drug treatment and had previously willingly complied with the registration requirements. However, the evidence shows, at a minimum, that Defendant willfully failed to update his address following his departure from the drug treatment program within the time provided by the statute.

¶ 40 We have held:

> "Willful" as used in criminal statutes means the wrongful

> doing of an act without justification or excuse, or the commission of an act purposely and deliberately in violation of law.
>
> The word wil[l]ful, used in a statute creating a criminal offense, means something more than an intention to do a thing. It implies the doing [of] the act purposely and deliberately, indicating a purpose to do it without authority—careless whether he has the right or not—in violation of law, and it is this which makes the criminal intent without which one cannot be brought within the meaning of a criminal statute.

*State v. Moore*, 240 N.C. App. 465, 478, 770 S.E.2d 131, 141 (citation omitted), *disc. rev. denied*, 368 N.C. 353, 776 S.E.2d 854 (2015).

¶ 41 The evidence, in the light most favorable to the State, shows that Defendant was aware of his obligation to update his address,[4] and was capable of updating his address, but did not. In the light most favorable to the State, the evidence indicates that Defendant left the treatment program in Wayne County on 11 July 2019. Defendant was not found at his former address at the men's shelter, and the shelter records reflect that he did not stay there from 11 July 2019 until his arrest on 4 August 2019. Instead, based on the testimony of Defendant's then-girlfriend, it appears Defendant stayed at her home in Wake County starting on 13 July 2019 until the time of his arrest. As a whole, the evidence, when viewed in the light most

---

[4] This is supported by Defendant's testimony acknowledging his knowledge of this obligation, his signature on forms indicating his obligations to register, and his past conduct in updating his address when he has moved.

favorable to the State, makes clear that Defendant did not update the Wake County Sheriff's Office of his change of address from the men's shelter within three business days of his change of address.[5] Furthermore, when viewed in the light most favorable to the State, the evidence shows Defendant understood his obligation to notify his last registered sheriff's office when he moved. Based on these showings, we conclude that Defendant's failure to notify the Wake County Sheriff's Office of his change of address was done "purposely and deliberately, indicating a purpose to do it without authority—careless whether he has the right or not—in violation of law," and was thus willful. *Id.* Accordingly, the trial court did not err.

**2. Sufficient Evidence of the Felonies Underlying Defendant Having Attained Habitual Felon Status**

¶ 42    In terms of the sufficiency of the underlying convictions for Defendant having attained habitual felon status, Defendant argues there was no evidence indicating the date that the first and second prior felonies were committed. Defendant contends this is problematic because it thwarts efforts to determine if there was an overlap between when the felonies occurred or if Defendant was of age. *See* N.C.G.S. § 14-7.1(c) (2021) ("For the purposes of this Article, felonies committed before a person attains the age of 18 years shall not constitute more than one felony. The commission

---

[5] We note there the relevant time period here is from 13 July 2019 until 4 August 2019.

of a second felony shall not fall within the purview of this Article unless it is committed after the conviction of or plea of guilty to the first felony."). The parties dispute whether our caselaw requires this evidence to survive a motion to dismiss. However, assuming—without deciding—the evidence is required, there was evidence, when viewed in the light most favorable to the State, that reflects the date the first and second prior felonies were committed.

¶ 43    The trial court admitted State's Exhibit 7-H, which is a criminal record for Defendant developed from the Division of Criminal Information. This exhibit contains an incident date for each offense included, information regarding the disposition of the case, and information regarding sentencing in the case.[6]  For the first two offenses constituting the underlying felonies here—first-degree attempted robbery and fifth-degree attempted criminal sale of a controlled substance—the incident date is represented to be the same as the arrest date. For Defendant's conviction for first-degree attempted robbery, the exhibit shows, in the light most favorable to the State, that Defendant committed the offense on the incident date of 18 December 1995 and pleaded guilty to the offense on 16 October 1997. For Defendant's conviction for fifth-degree attempted criminal sale of a controlled

---

[6] Defendant contends that we do not know what the "incident date" means; however, in the light most favorable to the State, we can reasonably infer that the "incident date" refers to the date the offense was committed.

substance, the exhibit shows, in the light most favorable to the State, that Defendant committed the offense on the incident date of 7 April 2000 and pleaded guilty to the offense on 5 July 2001. Finally, for Defendant's conviction for second-degree rape, the exhibit shows, in the light most favorable to the State, that Defendant committed the offense on 3 September 2005[7] and pleaded guilty to the offense on 18 September 2006. State's Exhibit 7-H also contains Defendant's date of birth, 24 May 1975.

¶ 44 Using this information from State's Exhibit 7-H, in the light most favorable to the State, we hold that each underlying felony conviction used to conclude that Defendant attained habitual felon status was committed after Defendant pleaded guilty to the previous offense used. Additionally, we hold that all of the underlying offenses occurred after Defendant had attained the age of eighteen, with the earliest occurring when Defendant was 20 years old.

¶ 45 As a result, when viewed in the light most favorable to the State, there was sufficient evidence of the dates of offenses of these felonies to determine that there was no overlap between the date of the commission of the felonies and the date of the preceding felony's conviction. Also, it appears Defendant had attained the age of 18 years old for all of the underlying offenses. As a result, the evidence underlying the first and second prior felonies was sufficient to survive Defendant's motion to dismiss.

---

[7] Defendant acknowledges that the State presented sufficient evidence regarding the dates concerning the second-degree rape charge.

### D. Right to Allocution

¶ 46      Defendant contends that the trial court improperly deprived him of the right to allocution when the following exchange occurred at sentencing:

> THE COURT: All right.  Stand up, [Defendant].  Anything you want to say?
>
> DEFENDANT: Yes.  I need -- to say what I want to say, I need to get my paperwork.
>
> THE COURT: Well, we're not going to do that.  Anything you want to say to me right now before you're sentenced?
>
> DEFENDANT: Yes.  I asked to get it before I even came out here, and they rushed me and said, "Come on now." Please.  I mean, this is my chance to speak to you.
>
> THE COURT: Anything you want to say to me before you're sentenced?
>
> DEFENDANT: Yes, I do.  I have it right there in --
>
> THE COURT: All right.  Your papers aren't relevant right now.  All right.  Moving to sentencing, Madam Clerk, it is a class C on the habitual felon status, record level two.  The sentence will be in the presumptive range.  He's sentenced to a minimum term of 83 months, maximum terms of 112 months active time.  He's to receive credit for all pretrial confinement.  All right.  Good luck to you, [Defendant] . . . .
>
> [DEFENSE COUNSEL]: Sorry, Judge.  I didn't mean to interrupt.  I would like to enter notice of appeal in open court.
>
> THE COURT: All right.  Enter notice of appeal.
>
> DEFENDANT: I don't just -- I don't get to say anything now to you, Judge?

THE COURT: No.

N.C.G.S. § 15A-1334(b) reads "[t]he defendant at the hearing may make a statement in his own behalf." N.C.G.S. § 15A-1334(b) (2021). In a past case involving the right to allocution, we have stated:

> [A]llocution, or a defendant's right to make a statement in his own behalf before the pronouncement of a sentence, was a right granted a defendant at common law. The United States Supreme Court has also emphasized the significance of this right, observing that "the most persuasive counsel may not be able to speak for a defendant as the defendant might, with halting eloquence, speak for himself."
>
> Our appellate cases have held that where defense counsel speaks on the defendant's behalf and the record does not indicate that the defendant asked to be heard, the statute does not require the court to address the defendant and personally invite him or her to make a statement. [N.C. G.S.] § 15A-1334, while permitting a defendant to speak at the sentencing hearing, does not require the trial court to personally address the defendant and ask him if he wishes to make a statement in his own behalf.
>
> However, a trial court's denial of a defendant's request to make a statement prior to being sentenced is reversible error that requires the reviewing court to vacate the defendant's sentence and remand for a new sentencing hearing.

*State v. Jones*, 253 N.C. App. 789, 797, 802 S.E.2d 518, 523-24 (2017) (quoting *Green v. United States*, 365 U.S. 301, 304, 5 L. Ed. 2d 670, 673 (1961)) (marks and citations omitted); *see also State v. Miller*, 137 N.C. App. 450, 461, 528 S.E.2d 626, 632 (2000) (marks and citations omitted) ("[N.C.G.S.] § 15A-1334(b) expressly gives a non-capital

defendant the right to make a statement in his own behalf at his sentencing hearing if the defendant requests to do so prior to the pronouncement of sentence. Because the trial court failed to do so, we must remand these cases for a new sentencing hearing.").

¶ 48     Here, we conclude Defendant's right to allocution was violated. Once the trial court asked Defendant if he had anything to say, Defendant made an unambiguous request to make a statement. Defendant proceeded to request that he receive his papers, which the trial court refused to allow.[8] In the exchange with the trial court, Defendant had three opportunities to make a statement without the papers; however, each opportunity he spent discussing his desire for his papers.

¶ 49     On this Record, we hold the trial court committed reversible error by denying Defendant his statutory right to allocution. N.C.G.S. § 15A-1334(b) states "[t]he defendant at the hearing may make a statement in his own behalf." N.C.G.S. § 15A-1334(b) (2021). Further, our caselaw unambiguously holds "a trial court's denial of a defendant's request to make a statement prior to being sentenced is reversible error that requires the reviewing court to vacate the defendant's sentence and remand for a new sentencing hearing." *Jones*, 253 N.C. App. at 797, 802 S.E.2d at 524. We have

---

[8] We are unaware of any statute or caselaw that obligates the trial court to permit a defendant to receive papers to aid in a statement to the trial court, and we make no ruling regarding this request.

applied the rule to broader circumstances and "have held that a trial court effectively denied a defendant the right to be heard prior to sentencing even when the court did not explicitly forbid the defendant to speak." *Id.* at 798, 802 S.E.2d at 524. In *Jones,* we held:

> Our review of the transcript shows that the trial court was informed that [the] defendant wished to address the court and that the trial court acknowledged this request. However, during [the] defense counsel's presentation, the court indicated that it had already decided how to sentence [the] defendant. After hearing from a detective who had investigated the case, the trial court became impatient, asking if those present expected the court to give [the] defendant 'a merit badge' and accusing them of portraying [the] defendant as 'a choir boy.' Immediately thereafter, the trial court pronounced judgment. We conclude that, on the facts of this case, [the] defendant was denied the opportunity to be heard prior to entry of judgment.

*Id.* at 802, 802 S.E.2d at 526. Similarly, in *State v. Griffin,* we held:

> [the] defense counsel could have reasonably interpreted the trial judge's statement [that it 'would be a big mistake' to permit the defendant to speak at sentencing] to mean that the defendant would receive a longer sentence if he testified. Accordingly, we find that the defendant's right to testify under [N.C.G.S.] § 15A-1334(b) was effectively chilled by the trial judge's comment.

*State v. Griffin*, 109 N.C. App. 131, 133, 425 S.E.2d 722, 723 (1993).

¶ 50        Like in *Jones* and *Griffin,* we believe this case presents a circumstance justifying remand for a new sentencing hearing, despite the facts here being less egregious. Due to the clear invocation of Defendant's right to allocution, the trial

court should have indicated that Defendant was not going to be permitted to receive his papers and clarify whether Defendant was still interested in making a statement without his papers before it proceeded to sentencing. Instead, the trial court summarily indicated "we're not going to do that. Anything you want to say to me right now before you're sentenced?"[9]

¶ 51     We acknowledge that there is caselaw indicating that "[N.C.G.S.] § 15A-1334, while permitting a defendant to speak at the sentencing hearing, does not require the trial court to personally address the defendant and ask him if he wishes to make a statement in his own behalf." *State v. McRae*, 70 N.C. App. 779, 781, 320 S.E.2d 914, 915 (1984), *disc. rev. denied*, 313 N.C. 175, 526 S.E.2d 35 (1985). To some extent, this suggests that if a defendant fails to take advantage of his opportunity to exercise his right to allocution, he waives it. *See also State v. Rankins*, 133 N.C. App. 607, 613, 515 S.E.2d 748, 752 (1999) ("The purpose of allocution is to afford [a] defendant an opportunity to state any further information which the trial court might consider when determining the sentence to be imposed."). However, there is no binding caselaw that holds a defendant waives his right to allocution where there is a clear

---

[9] The Record does not indicate how much time passed between the trial court's question and pronouncement of Defendant's sentence.

invocation of the right to allocution and an attempt to make a statement.[10]

¶ 52    We find *Griffin* and *Jones* to present similar factual scenarios. Ultimately, like in *Griffin* and *Jones,* we conclude the trial court effectively denied Defendant the opportunity to allocute by foreclosing his opportunity without clearly indicating Defendant would only be allowed to make a statement without his papers and inquiring into Defendant's interest in doing so. We vacate Defendant's sentence and

---

[10] The closest our caselaw comes is in *State v. Moseley* and in *State v. Pearson,* an unpublished case. In *Moseley,* the trial court granted the defendant's motion for allocution; but, "when given the opportunity at the appropriate stage of the proceedings, [the] defendant failed to remind the trial court of his wish to allocute." *State v. Moseley,* 338 N.C. 1, 53-54, 449 S.E.2d 412, 444 (1994), *cert. denied,* 514 U.S. 1091, 131 L. Ed. 2d 738 (1995). Our Supreme Court reasoned that "[s]ince [the] defendant does not have a constitutional, statutory, or common law right to allocution [at the conclusion of a capital sentencing proceeding] and since [the] defendant failed to remind the court of his desire to speak to the jury at the appropriate stage of the case, we conclude that there was no error." *Id.* at 54, 449 S.E.2d at 444. This case is distinct from *Moseley* in that Defendant *does* have a statutory right to allocution upon invoking it in a non-capital case and Defendant did not fail to assert his right at the appropriate time.
     In *Pearson*, we held:
> [The] defendant was given the opportunity to make a statement.
> However, rather than address issues related to sentencing, [the]
> defendant complained about the performance of his attorney.
> Thus, we conclude that the trial court did not abuse its discretion
> by refusing to allow [the] defendant to continue his statement.

*State v. Pearson,* No. COA04-585, 168 N.C. App. 409, 2005 WL 221503, at *3 (2005) (unpublished). In addition to being unpublished, and therefore non-binding, *Pearson* is also distinct from the facts *sub judice.* Defendant did not use his opportunity to complain about something unrelated to his right to allocution; instead, Defendant attempted to gain access to papers that he intended to use to exercise his right to allocution. Indeed, each time Defendant spoke, he indicated his intent to exercise his right to allocution.
     In light of the factual differences in *Moseley* and *Pearson,* in addition to *Pearson* being unpublished, we do not find them controlling or persuasive on this issue.

remand for a new sentencing hearing. *See Jones*, 253 N.C. App. at 797, 802 S.E.2d at 524.

### E. Attorney Fees

¶ 53 Defendant argues the trial court improperly entered a civil judgment for attorney fees without notice or opportunity to be heard regarding the fees. However, Defendant did not properly appeal this issue[11] and instead filed a petition for writ of certiorari to seek our review.

¶ 54 We may issue a writ of certiorari "in appropriate circumstances." N.C. R. App. P. 21(a)(1) (2022). A writ of certiorari is discretionary, "to be issued only for good and sufficient cause shown." *State v. Rouson*, 226 N.C. App. 562, 564, 741 S.E.2d 470, 471 (citation omitted), *disc. rev. denied*, 367 N.C. 220, 747 S.E.2d 538 (2013). "A petition for the writ must show merit or that error was probably committed below." *Id.* at 563-64, 741 S.E.2d at 471.

¶ 55 Here, because there are no civil judgments *entered* against him for attorney fees in the Record, we deny Defendant's petition for writ of certiorari and do not reach the underlying issue. "[A] judgment is entered when it is reduced to writing, signed by the judge, and *filed* with the clerk of court[.]" N.C.G.S. § 1A-1, Rule 58 (2017)

---

[11] On 18 September 2019, Defendant was sentenced and entered oral notice of appeal, with written notice of appeal being entered on 20 September 2019. However, subsequently, the order for attorney fees was entered on 25 October 2019. As a result, Defendant's original notice of appeal did not include the order as it was entered prior to the attorney fees order.

(emphasis added); *see also In re Thompson*, 232 N.C. App. 224, 228, 754 S.E.2d 168, 171 (2014) ("Because the order was not filed, it was not entered."). Although there is a civil judgment order for attorney fees in the Record, there is no indication it has been filed with the Wake County Clerk of Court. As a result, "[w]e lack subject matter jurisdiction to review an appeal from an order for attorney[] fees not entered as a civil judgment. [A] [d]efendant will not be prejudiced unless and until a civil judgment is entered." *State v. Hutchens,* 272 N.C. App. 156, 160, 846 S.E.2d 306, 310 (2020).

¶ 56        We deny Defendant's petition for writ of certiorari as it is without merit due to the lack of evidence that a judgment was entered against Defendant that he may appeal from. We dismiss the portion of Defendant's appeal regarding the civil judgment for attorney fees.

## CONCLUSION

¶ 57        Defendant's indictment sufficiently alleged the essential elements of failure to notify the last registering sheriff of a change of address under N.C.G.S. § 14-208.11(a)(2), bestowing the trial court jurisdiction over the case. Additionally, the trial court did not plainly err in its jury instructions and properly denied Defendant's motions to dismiss. However, the trial court denied Defendant his statutory right to allocution, requiring us to vacate Defendant's sentence and remand for a new sentencing hearing. Finally, we deny Defendant's petition for writ of certiorari and dismiss his argument regarding attorney fees.

NO ERROR IN PART; NO PLAIN ERROR IN PART; VACATED AND REMANDED FOR NEW SENTENCING HEARING IN PART; DISMISSED IN PART.

Judges INMAN and WOOD concur.